Darin DUNLAP, A Minor By his guardian of his person, Carolyn Sue WELLS, and By the guardian of his estate, Texas Commerce Bank of Arlington, Plaintiffs,

v.

Thomas L. BUCHANAN, M.D. and Thomas L. Buchanan, M.D., P.A., Defendants.

No. LR-C-82-890.

United States District Court, E.D. Arkansas, W.D.

July 22, 1983.

Charles R. Hicks, and Phillip H. McMath, McMath Law Firm, Little Rock, Ark., for plaintiffs.

W.A. Eldredge, Jr., and Laura A. Hensley, Friday, Eldredge & Clark, Little Rock, Ark., for defendants.

## ORDER OF DISMISSAL

ROY, District Judge.

Pending before the Court is the defendant's motion to dismiss, containing the contention that diversity of citizenship does not exist, so that this Court is without subject matter jurisdiction. The parties have briefed the issue and several depositions have been filed for consideration by the Court.

Darin Dunlap was born on June 19, 1976 in Conway County, Arkansas where he resided with his family until he was moved to Texas in 1982. A complaint was originally filed in the Circuit Court of Conway County, Arkansas by Darin Dunlap, A Minor, by his father, guardian and next friend, Randall T. Dunlap, later amended to include the First State Bank and Trust Company of Conway as guardian of Darin's estate. The allegations in that complaint were that the defendant, Dr. Buchanan, negligently delivered Darin causing severe mental retardation. That case was set for trial on May 24, 1982, however, the plaintiffs dismissed their complaint on May 20, 1982. In June, 1982 Darin's mother took him to Hurst, Texas where they stayed with his aunt, Carolyn Sue Wells, while Darin had surgery on July

6, 1982 at the Children's Medical Center in Dallas. On October 5, 1982 Darin was moved into a home owned by Ms. Lee Baber which is licensed to care for mentally retarded children by the State of Texas. The Baber home is located in Dallas where Darin attends a special school for the handicapped during the day. Ms. Baber charges $367.00 per month to keep Darin (she also keeps two other retarded children in the four bedroom house). Because Darin is retarded he receives a monthly Supplemental Security Income check from the Federal Government which together with the $82.70 Darin's parents pay each month makes up the $367.00. Ms. Baber stated in her deposition that Darin's parents are responsible for his medical and dental bills. (Baber depo. p. 19).

This action, containing the same allegations as the previously dismissed state complaint, was then filed December 9, 1982 alleging that since Darin was a Texas resident as were his guardians complete diversity of citizenship exists (the defendant is a resident of Conway County, Arkansas).

Although Darin's mother and sister stayed in Texas during the summer of 1982 with Ms. Wells, his sister returned to school in Arkansas in the fall and his mother returned after he was placed in the Baber home. At no time did his father leave the family home in Conway County, Arkansas. Although Mrs. Dunlap stated in her deposition that she and Darin had "moved to Texas" she also stated that her sole purpose there was to find a placement for Darin after which she planned to return to Arkansas (Dunlap deposition p. 10).

The Arkansas guardianship was dismissed on January 28, 1983. The Texas bank was appointed guardian of Darin's estate solely to receive any proceeds from this litigation. Plaintiff's counsel made this point quite clear in his brief. It is abundantly evident from the depositions of Ms. Dunlap, Ms. Baber and Ms. Wells that Ms. Wells and her husband as guardians of his person have not exercised any control over Darin. He never stayed in the Wells home unless his mother was present also. Ms. Wells has made no decisions regarding Darin's welfare, perceiving her role as taking "his mother's place when she's not here. . . ." (Wells depo. p. 46). She didn't know the name of Darin's school nor the name of his doctor. She indicated that the length of Darin's stay at Ms. Baber's home was ultimately the responsibility of his mother. Mr. and Mrs. Wells appear to have done nothing more than give Darin's mother a place to stay when she is in Texas to visit Darin and to check on him each month. Darin's parents remain financially responsible for him and have exercised traditional parental control over him (Wells depo. pp. 27–40).

■ Although there has been much discussion of the roles of the guardians in this case by both sides, they do agree that the domicile of the ward and not that of the guardian is determinative of the diversity question. The Court agrees that the critical issue is Darin's domicile, and the fact that Mr. and Mrs. Wells and the Texas Bank are Texas residents is irrelevant. *McSparran v. Weist,* 402 F.2d 867 (3rd Cir.1968); *Rogers v. Bates,* 431 F.2d 16 (8th Cir.1970); *Martineau v. City of St. Paul,* 172 F.2d 777 (8th Cir.1949).

The plaintiff argues that Darin is domiciled in Texas because his mother took him there, left him at the Baber home and declares him to be domiciled in Texas. Indeed plaintiff's counsel's summary of his argument found on page 8 of his brief is:

"... the plaintiff has made a bona fide change of residency to the State of Texas where he is enrolled in school and is presently receiving medical care...."

Darin is a severely retarded seven year old boy. Did his parents change his domicile by enrolling him in school and placing him in an institution (the certified Baber home) in Texas?

■ It is well settled that under normal circumstances domicile is determined

by physical presence and an intention to remain indefinitely. However, because minors and incompetents are unable to form the intent requirement the rules are different for them.

As the Distinguished Professor of Law Robert A. Leflar has said:

"When a legitimate child is born of a living father, its domicile is that of its father, and thereafter the child until its majority ordinarily continues to have the domicile of its father ... regardless of whether the child actually lives with its father or not." *American Conflicts Law,* 3rd Ed., § 12

"An infant who is insane has the domicile of his parents, like any other minor." Id. § 13

Arkansas courts follow these general rules. *In re Watson,* 99 F.Supp. 49 (D.C. Ark.1951).

■ It has been uniformly held that minors attending school away from home retain their parents' domicile. *Restatement (Second), Conflict of Laws* 1971, § 22; *Bell v. Milsak,* 106 F.Supp. 219 (W.D.La.1952); *Lyons v. Salve Regina College,* 422 F.Supp. 1354 (D.C.R.I.1976), rev'd on other grounds 565 F.2d 200.

Addressing the issue of an institutionalized incompetent's domicile, a federal court in Delaware held the incompetent to be a resident of her surviving parent's home rather than the institution which was in another state. *Chew v. Nicholson,* 281 F. 400 (D.C.Del.1922). In that case the girl was born in Delaware where she resided with her parents until age 22 when she became insane. Her mother admitted her to an asylum in Pennsylvania where she lived until her death sixty years later. The court held that she had retained her domicile of origin in Delaware which had continued to be her mother's residence until her death. Since she was *non compos mentis,* she lacked the capacity to form the intent to change her domicile and her mere presence in Pennsylvania for sixty years had no effect.

One of the principal reasons for the diversity rule is "... to give a citizen of one state access to an unbiased court to protect him from parochialism if he was forced into litigation in another state in which he was a stranger and of which his opponent was a citizen." *Ziady v. Curley,* 396 F.2d 873, 875 (4th Cir.1968). This Court does not believe that this reason is violated by finding an absence of diversity in this case. For all of the above reasons, therefore,

IT IS CONSIDERED, ORDERED AND ADJUDGED:

That the defendants' motion to dismiss for want of subject matter jurisdiction is granted and this case is dismissed for lack of jurisdiction.