**James Thomas WILSON, By and Through his next friend and mother, Lorelle L. WILSON, Plaintiff,**

v.

**Edward T. KIMBLE, III, M.D., Pediatric Associates, P.C., the City of Colorado Springs, a Municipal corporation, by and through its agent Memorial Hospital, Defendants.**

**Civ. A. No. 82–K–795.**

United States District Court, D. Colorado.

Oct. 20, 1983.

---

Kenton D. Kinnaird, Colorado Springs, Colo., Marvin Firestone, Boulder, Colo., for plaintiff.

Philip L. Dutt, Johnson, Mahoney & Scott, P.C., Denver, Colo., for Kimble and Pediatric Assoc.

Lee R. Wills, Colorado Springs, Colo., for City and Hospital.

## MEMORANDUM OPINION AND ORDER

KANE, District Judge.

This case is before me on a variety of pre-trial motions, including two motions to dismiss and a motion to strike. Because of my disposition of defendant Kimble's motion to dismiss, however, I will not address the other pending motions in this opinion. Kimble's motion raises an important question not previously decided in this circuit and rarely raised in other circuits: where is the domicile of a minor whose parents are temporarily separated without benefit of a divorce decree, a separation agreement, or an award of custody. For the reasons discussed below, I hold that a minor's domicile is that of his or her father in the absence of such a decree, award or agreement.

This suit is brought by a minor plaintiff by and through his next friend and mother, Lorelle Wilson. The plaintiff alleges that he was a citizen of Illinois at the time this suit was filed. The complaint seeks damages for medical malpractice against a pediatrician and neonatologist, Edward T. Kimble, III, Kimble's professional corporation, Pediatric Associates, P.C., and the Memorial Hospital of the City of Colorado Springs. In substance, the complaint alleges that Wilson was born prematurely and was placed in a regular nursery bassinet for three hours after birth, in violation of normal procedures for premature and small babies. Approximately three hours later the doctors and nurses learned that Wilson was blue, at which time he was placed in an oxygen tent in the intensive care nursery. Wilson had been diagnosed to have cerebral palsy, spastic quadriplegia, with a life expectancy of 60 years.

The complaint was filed in this case on May 19, 1982. A week before, Mrs. Wilson moved to Illinois, taking the plaintiff with

her. From the facts and affidavits before me, it appears that she may have acquired domicile there. She obtained an Illinois driver's license and registered to vote there. She apparently moved back to Illinois for two reasons, because of marital difficulties and because she thought she could obtain a better education for her son there. Approximately five months later, she and her husband were reconciled. She returned to Colorado Springs with the plaintiff where she continues to live with her husband. For the limited purposes of this motion, I assume she was domiciled in Illinois when this suit was filed.

■ There is no dispute between the parties that the domicile of a minor child for diversity purposes must be determined by reference to the citizenship of some other person because an infant is not capable of forming the requisite intent to establish independent citizenship. Where the parties disagree is in the person by whose citizenship the plaintiff's domicile should be determined. Kimble urges me to adopt a rule which would determine Wilson's domicile by reference to his father, thus making Wilson a citizen of Colorado and destroying complete diversity. Not surprisingly, plaintiff would have me determine his domicile by reference to his mother's citizenship. Since Mrs. Wilson had formed the requisite intent to become a citizen of Illinois, there would be complete diversity.

■ This is a diversity case. As such, state law supplies the necessary underlying substantive law. Yet the question of Wilson's domicile can only be determined by reference to federal common law. *Ziady v. Curley*, 396 F.2d 873 (4th Cir.1968); *Stifel v. Hopkins*, 477 F.2d 1116 (6th Cir.1973). The only limitation on this approach is the singular dearth of federal common law on point, causing courts to

> look to state law for guidance in defining terms, formulating concepts, or delineating policies.

477 F.2d at 1120. I am in agreement with *Stifel v. Hopkins* that conflicts law is "useful in providing basic working definitions," as long as we do not lose sight of the important federal interests involved. 477 F.2d at 1120.

One of the earliest cases on point is *Lamar v. Micou*, 112 U.S. 452, 5 S.Ct. 221, 28 L.Ed. 751 (1884). At issue was a guardian's liability to his minor ward for mismanagement and failure to render an accounting. The court stated the general rule that the domicile of an infant follows that of his father, unless deceased, in which case domicile follows the mother as long as she remains a widow. 112 U.S. at 470, 5 S.Ct. at 229. To the extent that the rule in *Lamar* finds support in the

> basic concept of feudal law that a married woman could have no separate legal existence apart from her husband,

its vitality must be questioned. *Ziady v. Curley*, 396 F.2d at 876. As long as there is agreement, however, that an infant cannot make an independent choice of domicile, his or her citizenship can only be determined by reference to the father or the mother.

Section 14, *Restatement (Second) Conflicts of Laws*, (1971), follows the general rule laid down in *Lamar:*

> (1) The domicil of origin is the domicil which a person has at birth.
>
> (2) The domicil of a legitimate child at birth is the domicil of its father at that time, subject to the rule stated in ¶ 22 pertaining to divorce or separation of the parents.

Section 22 provides: "A minor has the same domicil as the parent with whom he lives." Comment "d" pertains to the separation of the child's parents:

> A child's domicil, in the case of the divorce or separation of his parents, is the same as that of the parent to whose custody he has been legally given. If there has been no legal fixing of custody, his domicil is that of the parent with whom he lives....

■ While I am in general agreement with this rule, I find it unsatisfying in the present case because it fails to distinguish a legal separation from a temporary estrangement. To the extent that the Re-

statement treats a temporary separation as if it were a legal separation without benefit of a legal fixing of custody, I do not follow it. Instead, I hold that where a minor child is living with his temporarily estranged mother without benefit of a legal separation or a custody decree, the child retains the domicile and citizenship of his father, if he be living.

My resolution of this issue is consistent with those few cases which have considered the problem. The Sixth Circuit adopted the Restatement approach in *Ziady v. Curley, supra.* It said, however, there:

> We reach this result from consideration of the major rationale of diversity jurisdiction. The text writers and the cases are in accord that one of the principal purposes of diversity jurisdiction was to give a citizen of one state access to an unbiased court to protect him from parochialism if he was forced into litigation in another state in which he was a stranger and of which his opponent was a citizen.

396 F.2d at 875. *And see Elliott v. Krear*, 466 F.Supp. 444 (E.D.Va.1979); *Fahrner v. Gentzsch*, 355 F.Supp. 349 (E.D.Pa.1972). *Accord, Dunlap by Wells v. Buchanan*, 567 F.Supp. 1435 (E.D.Ark.1983). In the instant case, Wilson would be more a stranger to the Illinois courts than to those in Colorado. All his significant contacts are with Colorado Springs, Colorado—not Illinois. Thus, the purpose behind diversity jurisdiction is served by this result as well. *See Stifel v. Hopkins*, 477 F.2d 116, 1125–26 (6th Cir.1973).

IT IS ACCORDINGLY ORDERED that defendant Kimble's motion to dismiss is granted.