Arthur **CLYDE IV, an infant by his father and natural guardian, Arthur CLYDE III, and Arthur Clyde III, individually, Plaintiffs,**

v.

**LUDWIG HARDWARE STORE, INC. and Merrick Fradkin, Defendants.**

No. 92 Civ. 1742 (JSM).

United States District Court, S.D. New York.

Feb. 23, 1993.

Calano & Calano, New York City, for plaintiff.

Huwel & Mulhern, Garden City, NY, for defendant Ludwig Hardware Store, Inc.

Herbert Dillon, Marcy Scher, Dillon Haber & Dillon, Roslyn, NY, for defendant Merrick Fradkin.

## MEMORANDUM ORDER AND OPINION

MARTIN, District Judge:

Defendant Merrick Fradkin moves to dismiss for lack of subject matter jurisdiction, lack of personal jurisdiction and improper venue.

*Background*

This personal injury case arises out of an incident in which defendant Merrick Fradkin's ("Fradkin") dog allegedly bit plaintiff Arthur Clyde IV ("Clyde IV"), a three-year old boy, while Clyde IV was with his mother in a hardware store in New Jersey in which Fradkin was employed and which was owned by defendant Ludwig's Hardware Store, Inc. ("Ludwig, Inc."). Clyde IV was taken to a New Jersey hospital where he received extensive medical treatment.

Clyde IV's father, plaintiff Arthur Clyde III ("Clyde III") is suing on behalf of his son for $2 million for damages sustained and individually for $200,000 for loss of services and medical costs.

The only evidence before this Court regarding the citizenships of the plaintiffs are depositions of Clyde III, Clyde IV,[1] and Mary Clare Ditton ("Ditton"), Clyde III's ex-wife and mother of Clyde IV.

Clyde III testified at his deposition that he maintained a residence at 209 East 61st St. in New York City and owned and operated an exercise studio in New York City around the corner from his apartment. He testified that although the studio was open from 7:00 a.m. to 9:00 p.m., he was not always present during those times. Clyde III also indicated that he maintained another residence at 84 Bedford Avenue in Teaneck, N.J. at his father's house ("84 Bedford"). According to his testimony, he visited his father two to three times a week, and slept there "sometimes."

---

1. The only probative testimony from Clyde IV's deposition tended to indicate that he resided with both parents.

Depositions of Clyde III and Ditton indicate that they were divorced in late 1990 or early 1991 and that they were awarded "joint custody" of Clyde IV. They apparently shared custody as "jointly" as possible; deposition testimony established that Clyde IV spent approximately three to four nights a week with each parent: either with Clyde III at his New York City apartment or at 84 Bedford, or else with Ditton at her residence at 289 Degraw Avenue also in Teaneck, New Jersey. Testimony further established that Clyde IV attended pre-school in New Jersey and visited a New Jersey pediatrician for his general medical care. Both parents testified that Clyde IV resided in both New York and New Jersey.

It is undisputed that defendants Ludwig, Inc. and Fradkin are citizens of New Jersey.

*Discussion*

Subject matter jurisdiction in this case is based on diversity jurisdiction. Whether complete diversity between the parties exists will depend on where the parties are domiciled.

Although Clyde III apparently maintains two separate residences, one in New York and one in New Jersey, he may have only one domicile by definition. *Williamson v. Osenton,* 232 U.S. 619, 34 S.Ct. 442, 58 L.Ed. 758 (1914); *National Artists Management Co. v. Weaving,* 769 F.Supp. 1224, 1227 (S.D.N.Y.1991). For a state to be a person's domicile requires physical presence in the state and an intention to remain there indefinitely. *Mississippi Band of Choctaw Indians v. Holyfield,* 490 U.S. 30, 48, 109 S.Ct. 1597, 1608, 104 L.Ed.2d 29 (1989). There is no question that Clyde III is a domiciliary of New York. He maintains an apartment in New York and works in New York, while his residence in New Jersey is due only to his father's residing there, a temporary condition which is subject to change. Since Clyde III is a domiciliary of New York while defendants are domiciled in New Jersey, diversity exists between them.

A far more interesting question is whether diversity exists between defendants and Clyde IV. It is Clyde IV's domicile, not that of his father suing on his behalf, which is

determinative of diversity jurisdiction. *Dunlap v. Buchanan,* 741 F.2d 165, 167 (8th Cir.1984). "The domicile of a minor is generally determined by reference to another person because minors are legally incapable of forming the requisite intent to regard a place as home ..." *Id.; see Holyfield,* 490 U.S. at 48, 109 S.Ct. at 1608. Historically, an infant took the domicile of its father. *Yarborough v. Yarborough,* 290 U.S. 202, 211, 54 S.Ct. 181, 185, 78 L.Ed. 269 (1933); *Kaiser v. Loomis,* 391 F.2d 1007, 1009 (6th Cir.1968); *Safeco Ins. Co. of Am. v. Mirczak,* 662 F.Supp. 1155, 1157 (D.Nev.1987); *De Wit v. KLM Royal Dutch Airlines, N.V.,* 570 F.Supp. 613, 616 (S.D.N.Y.1983); 1 Moore, Fed.Prac. 800.6 (1992); 13B Wright, Miller & Cooper, Fed.Prac. & Proc. 559 (1992). However, where custody passed to the mother as a result of separation, divorce, death, or some other event, the mother's domicile controlled until her remarriage, at which point the infant's domicile became fixed. *See* 1 Moore, *supra;* 13B Wright, Miller & Cooper, *supra.*

It is questionable whether the preference for the father's domicile is still valid in light of *Kirchberg v. Feenstra,* 450 U.S. 455, 101 S.Ct. 1195, 67 L.Ed.2d 428 (1981), *see De Wit,* 570 F.Supp. at 616 n. 6, and other modernizations of the law, *see, e.g. Ziady v. Curley,* 396 F.2d 873, 876 (4th Cir.1968) (erosion of rule that married woman has no separate legal existence calls preference into question). This question need not be reached however, since here the parents have divorced and been granted joint custody; no automatic preference is dictated by case law in such a situation. Indeed, there is no relevant case law squarely addressing this situation, and so Clyde IV's domicile must be determined by reference to analogous cases.

*Ziady v. Curley,* 396 F.2d 873 (4th Cir. 1968), is a pivotal case in this area. In *Ziady,* the court was faced with an infant whose mother was a domiciliary of North Carolina when his father died, rendering the infant a domiciliary of North Carolina. His mother subsequently remarried and moved with her child and second husband to New Jersey. While traditional analysis would have determined the infant's domicile to be

North Carolina, the court appealed to the underlying purposes of diversity jurisdiction, that of protecting true out-of-state litigants from state bias, in determining that the infant was realistically domiciled in New Jersey: "If the element of parochialism were to enter into the disposition of a suit in a North Carolina state court, we think that the infant plaintiff would be considered, *de facto,* a citizen of New Jersey." *Id.* at 875–76; *see also Dunlap v. Buchanan,* 741 F.2d at 168 (invoking purposes of diversity jurisdiction).

Cases following *Ziady,* both within that circuit and without, have similarly questioned the wisdom of the traditional mechanical rules. Where an infant was living with his grandparents in the state where he was born and continuously lived and his divorced mother with custody had recently established domicile in another state, the infant was held to be a domiciliary of his grandparents' state for diversity purposes. *Elliott v. Krear,* 466 F.Supp. 444 (E.D.Va.1979). A minor who lived with an aunt and uncle who provided for virtually all his needs was held to be domiciled in their state rather than the state of his parents, even though he had visited his parents at times and they had retained custody throughout. *Linville v. Price,* 572 F.Supp. 345 (S.D.W.Va.1983). Conversely, the purposes of diversity jurisdiction were found to justify applying the domicile of the father to a minor child who was living only temporarily with his estranged mother. *Wilson v. Kimble,* 573 F.Supp. 501 (D.Col.1983). *See generally* 13B, Wright, Miller & Cooper, *supra,* at 561–62.

The Restatement (Second) of Conflicts of Laws proposes that the child's actual residence determine his or her domicile, *see* § 22. While the Restatement discusses domicile in the context of conflict of law rules, its analogous relevance in the diversity jurisdiction context has been noted by courts and commentators alike. *See, e.g., Wilson,* 573 F.Supp. at 503; *De Wit,* 570 F.Supp. at 617 n. 7; 13B Wright, Miller & Cooper, *supra* at 562; *see also Rodriguez–Diaz v. Sierra–Martinez,* 853 F.2d 1027, 1030–31 (1st Cir. 1988) (recognizing value of conflicts reasoning but upholding primacy of analysis with regard to purposes of diversity jurisdiction).

As stated earlier, no case has directly addressed what domicile an infant should take when his or her divorced parents maintain joint and virtually equal custody. Keeping in mind the purposes of diversity jurisdiction, it is best to resolve domicile in favor of that state in which the infant primarily resides, at least where such residence is with one of the two parents. Here, while Clyde IV apparently spent equal time sleeping at both residences, he had more connections to New Jersey. There he attended pre-school and saw his pediatrician, the only two facts favoring either state available in the record. While the issue is not clear cut, the need to determine Clyde IV's domicile forces a decision that it is New Jersey.

Since plaintiff Clyde IV and the defendants are domiciled in the same state, New Jersey, complete diversity fails, and thus diversity jurisdiction is not present. There being no other basis for subject matter jurisdiction, this case will be dismissed.

Because this case will be dismissed due to the lack of subject matter jurisdiction, it is unnecessary to reach the issues of personal jurisdiction and venue.

For the reasons stated above, this case is DISMISSED.

SO ORDERED.