396 F.2d 873
 Alex James ZIADY, Jr., by his next friend, Mary Catherine
Reed, Appellant,
v.
Julia Ziady CURLEY, Individually, Julia Ziady Curley,
Trustee for Alex James Ziady, Jr., under the last will and
testament of Alex James Ziady; and Julia Ziady Curley,
Guardian for Alex James Ziady, Jr., by appointment of the
Superior Court of Johnston County, North Carolina, Appellees.
 No. 11558.
 United States Court of Appeals Fourth Circuit.
 Argued Jan. 8, 1968.
Decided June 12, 1968.
 
 John V. Hunter, III, Raleigh, N.C., for appellant.
 L. Austin Stevens, (E. V. Wilkins, Smithfield, N.C., on brief) for appellees.
 Before BOREMAN and WINTER, Circuit Judges, and MERHIGE, District judge.
 WINTER, Circuit Judge:
 
 
 1
 The infant plaintiff, by his next friend, sued the defendant, individually and as testamentary trustee under the will of the infant plaintiff's deceased father, and also as court-appointed guardian of the property and estate of the infant plaintiff, to surcharge her by reason of her administration of the trust estate, and to effect her removal as trustee and the appointment of a successor trustee. Plaintiff alleged that he was a citizen of New Jersey,[1] and defendant was a citizen of North Carolina. No dispute existed as to the citizenship of the defendant, but the district court dismissed the complaint for lack of diversity of citizenship on the ground that plaintiff, too, was a citizen of North Carolina. We conclude that plaintiff was a citizen of New Jersey, where he resided with his mother and stepfather. We reverse and remand the case for further proceedings.
 
 
 2
 The facts may be briefly stated. Plaintiff was born and raised in North Carolina, where he resided while the marriage between his parents existed. His parents were divorced in March, 1961. The decree of dissolution of the marriage, inter alia, awarded custody of the infant to his father, a citizen of North Carolina. The decree made no finding as to the fitness of either parent to have custody of the plaintiff. Indeed, we are told in oral argument that custody of the plaintiff's female sibling was awarded to his mother.
 
 
 3
 On April 17, 1961, plaintiff's mother married Charles Reed, to whom she is still married. On January 31, 1964, plaintiff's father died and his mother assumed custody of him. His mother and stepfather are now domiciled in New Jersey, and plaintiff lives with them.
 
 
 4
 We must decide, first, by what law the question of plaintiff's domicile is to be determined-- that of North Carolina or New Jersey, or the federal common law. We have no doubt that it is to the federal common law to which we should look. The question of domicile can arise, in regard to the diversity clause of Article III, 2 of the Federal Constitution and under 28 U.S.C. 1332, only in federal court. The problem is, therefore, one uniquely of federal cognizance and the considerations underlying Erie R.R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), do not obtain. Cf., Hinderlider v. LaPlata River & Cherry Creek Ditch Co., 304 U.S. 92, 110, 58 S.Ct. 803, 82 L.Ed. 1202 (1938). See also, Friendly, In Praise of Erie-- And of the New Federal Common Law 39 N.Y.U.L.Rev. 383 (1964).
 
 
 5
 With the exception of a doubtful authority of distinguishable application, Lamar v. Micou, 112 U.S. 452, 5 S.Ct. 221, 28 L.Ed. 751 (1884), we have not been referred to, nor have we found, any case which purports to establish the applicable federal common law. The rule stated in Restatement of the Law of Conflict of Laws (1934 Ed.) 38, and relevant comments, which we think should apply here, is as follows:
 
 
 6
 '38. POWER OF MOTHER OVER DOMICIL.
 
 
 7
 Except as stated in 31 (emancipated children), 32 (children of divorced parent when parent to whom custody is awarded is living), 33 (abandoned children) and 35 (adopted children), if the father dies and no guardian of his minor child's person is appointed, the child has the same domicil as that of the mother.
 
 Comment:
 
 8
 a. Upon the death of the father if no legal guardian of his minor child's person is appointed, the mother is entitled to the custody of the child.
 
 
 9
 d. If the mother remarries, the child's domicil follows that of the mother unless she abandons the child, as to which see 33.'
 
 
 10
 We reach this result from consideration of the major rationale of diversity jurisdiction. The text writers and the cases are in accord that one of the principal purposes of diversity jurisdiction was to give a citizen of one state access to an unbiased court to protect him from parochialism if he was forced into litigation in another state in which he was a stranger and of which his opponent was a citizen. 1 Barron and Holtzoff, Federal Practice and Procedure (Wright's Ed. 1960) 26; 1 Moore's, Federal Practice P 0.71(3.-1), and authorities cited therein. The infant plaintiff, for all practical purposes, and for the specific purpose envisioned by the founding fathers, is a stranger to the State of North Carolina. He had not resided there since his father's death, and there is little likelihood that he will resume there a permanent residence prior to his majority. If the element of parochialism were to enter into the disposition of a suit in a North Carolina state court, we think that the infant plaintiff would be considered, defacto, a citizen of New Jersey. For purposes of determining diversity jurisdiction, we hold that the infant plaintiff acquired the domicile of his mother and is a citizen of New Jersey.
 
 
 11
 A contrary holding would produce strange results. Thus, if we held plaintiff's domicile to be in North Carolina, this would permit plaintiff, if he became a party to a case in New Jersey involving questions solely of state law, and to which a citizen of New Jersey was the other party, to bring the case in, or to remove it to, a federal court (assuming that he could meet the monetary jurisdictional requirement), despite the fact that all of his significant contacts are with New Jersey, and despite the further fact that New Jersey's own interest could be expected to prevent her from discriminating against him. We do not believe that the diversity clause was intended to give persons in plaintiff's situation special access to federal courts when they become involved in a dispute of a purely local nature.[2]
 
 
 12
 In attempting to establish the correctness of the decision of the trial judge, defendant relies exclusively on the Lamar case. That case, like the instant one, was a suit to surcharge the guardian of an infant's property for mismangaement of the estate. The principal question was the standard by which the conduct of the guardian in management of the estate was to be measured, and it appeared that the rules of permissible investments varied greatly among the states. Like the case at bar, the infant was in the custody of a widowed and remarried mother.
 
 
 13
 The court decided that the domicile of the infant was the key to a determination of the law of what state to apply and, on the question of domicile, stated:
 
 
 14
 'An infant cannot change his own domicile. As infants have the domicile of their father, he may change their domicile by changing his own; and after his death the mother, while she remains a widow, may likewise, by changing her domicile, change the domicile of the infants; the domicile of the children, in either case, following the independent domicile of their parent. * * * But when the widow, by marrying again, acquires the domicile of a second husband, she does not, by taking her children by the first husband to live with her there, make the domicile which she derives from the second husband their domicile; and they retain the domicile which they had, before her second marriage, acquired from her or from their father. * * *' Id., pp. 470-471, 5 S.Ct., p. 229.
 
 
 15
 At first blush, the Lamar decision is diametrically opposed to the preferred rule set forth in the Restatement which we adopt. We have serious doubt, however, of the continued vitality of the Lamar case, and we conclude that, in any event, it is distinguishable.
 
 
 16
 In the discussion of domicile, the Lamar case can only be understood as a then expression of the basic concept of reudal law that a married woman could have no separate legal existence apart from her husband. As early as Williamson v. Osenton, 232 U.S. 619, 34 S.Ct. 442, 58 L.Ed. 758 (1914), Mr. Justice Holmes, in deciding affirmatively a question certified by this Court of whether a woman who had justifiably separated from her husband could establish a lawful domicile elsewhere, referred to the feudal doctrine as 'the now vanishing fiction of identity of person,' and added 'if that fiction does not prevail over the fact in the relation for which the fiction was created there is no reason in the world why it should be given effect in any other.' Id., p. 625, 34 S.Ct., p. 443. See also, Fitch v. Huff, 218 F.17 (4 Cir. 1913).
 
 
 17
 It needs little citation of authority to establish that, in the fifty-five years which have followed the decision in the Williamson case, by constitutional amendment, by statute, by court decision, and by contemporary thought,[3] the premise of Lamar has been effectively put to rest and, we add, to the extent that it has not been completely eradicated we, too, see no reason why it should be given effect in the case before us.
 
 
 18
 We do not question the correctness of the result in Lamar, insofar as it decided a choice of law problem. A careful reading of the court's opinion demonstrates that the primary considerations upon which the resolution of this choice of law problem turned were the necessity of adopting a rule which would provide a fixed and definite standard by which the investment conduct of the guardian could be measured and which would prevent those having control over the infant's person from themselves choosing the applicable law by changing the infant's state of residence. The importance of these considerations cannot be gainsaid and they might well dictate the same resolution of the choice of law problem should a similar case arise today.[4] These considerations, however, are not relevant in defining domicile for the purpose of determining whether diversity jurisdiction exist; indeed, there is no suggestion in this case that the infant plaintiff was not removed to New Jersey bona fidely and with an intention to remain for indeterminate duration. Thus, we do not consider Lamar authority because of the vastly different context in which the case before us has arisen.
 
 
 19
 Reversed and remanded.
 
 
 
 [1]
 Plaintiff does not dispute that the citizenship of the infant and not of the next friend determines whether diversity jurisdiction exists. See Woolridge v. McKenna, 8 F. 650 (C.C.W.D.Tenn.1881)
 
 
 [2]
 Of course, the venue and removal provisions of the Judicial Code, 28 U.S.C. 1391 and 1441, permit a local citizen, or, in the case of a corporation, what is essentially a local citizen, to obtain access to a local district court initially or by removal in a number of instances. They are operative, however, only when diversity of citizenship has been shown to exist
 
 
 [3]
 Indicative, but not exhaustive, of changes in the law to reflect changes in contemporary thinking are Amendment XIX, U.S. Constitution; 28 U.S.C. 1862 (as amended by Pub.Law 90-274); 42 U.S.C. 2000e-2
 
 
 [4]
 Of course under a modern conflict of law approach these considerations of policy would more likely be brought to bear explicitly and openly on the choice of law, rather than indirectly in the form of a problem of defining domicile. In any event, the question would today be decided by reference to state law, rather than by the molding of a federal rule as in the pre-Erie days of Lamar. See, Klazon Co. v. Stentor Electric Mfg. Co., 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941)