**Mrs. Violet J. ELLIOTT, etc.**

v.

**Donald J. KREAR et al.**

**Civ. A. No. 78–592–A.**

United States District Court,
E. D. Virginia,
Alexandria Division.

March 9, 1979.

J. Hunt Brasfield, Alexandria, Va., for plaintiff.

William O. Snead, III, Fairfax, Va., for defendants.

### MEMORANDUM

WARRINER, District Judge.

It is alleged that on Tuesday, 31 August 1976, the defendant, 9-year-old Michael Krear, approached 10-year-old Keith Michael Elliott with a slingshot and shot a gumball at Keith causing an injury. In State court this matter would have proceeded routinely to judgment, for State courts are courts of general jurisdiction. This Court is, however, one of limited jurisdiction, and the question of whether this Court may entertain the merits of the lawsuit

stemming from this backyard scuffle between two little boys is the nicest question of diversity jurisdiction that has ever confronted this judge.

Plaintiff's complaint alleges diversity jurisdiction under 28 U.S.C. § 1332. It is alleged that the plaintiff is a citizen of the State of California and that the defendants are citizens of the Commonwealth of Virginia. There is no question about the citizenship of the defendants. On the eve of trial, however, the Court became aware of the possibility that the plaintiff may have been a citizen of the Commonwealth of Virginia on the day this suit was filed. Accordingly, the Court raised the question of subject-matter jurisdiction *sua sponte*. A hearing was held on the question of jurisdiction and the parties were directed to file briefs. The question of the Court's jurisdiction is now ripe for disposition.

The Court finds the facts to be as follows: Plaintiff is the son of divorced parents. He has lived all of his life in Virginia except for a short stay in California. Plaintiff's mother and father were divorced by a Nevada decree which purported to give custody of plaintiff to his mother. The father is presumed to have continued as a Virginia citizen. It is not determined whether or not the Nevada court obtained the requisite jurisdiction so as to give its custody decree validity.

After the divorce plaintiff continued to live in Virginia with his mother in the home of his maternal grandparents until sometime in 1976, when his mother left Virginia and went to California to study law. The plaintiff was left in the custody of his maternal grandparents who were citizens of Virginia. The plaintiff's mother did not initially form an intent to remain indefinitely in California, but intended at first to get her legal training in California and then return home to Virginia. However, several months after commencing law school, plaintiff's mother did form an intent to remain indefinitely in California. The plaintiff's mother was so residing in California when the gumball incident occurred. Though the incident occurred in August the plaintiff's grandparents, who were caring for the plaintiff and paying for all of his support, did not inform plaintiff's mother of the incident until she returned to Virginia at Christmas time, 1976. Complete medical treatment and legal advice and services were sought and obtained by the grandparents without reference to plaintiff's mother.

In April or May of 1977, the plaintiff went to California to live with his mother. Shortly after the plaintiff moved to California, his grandparents followed him there and lived with plaintiff and his mother in California for about a year. In the spring of 1978, the plaintiff and his grandparents moved back to their home in Virginia. Plaintiff's mother, having abandoned her intention to remain in California indefinitely, nevertheless continued in California to finish her studies.

Plaintiff's mother left California on 31 August 1978. At the time she left California, plaintiff's mother intended to travel to Virginia, rest a few days, and continue with her children to Georgia, where she was to resume her studies at a different law school. When plaintiff's mother arrived in Virginia, however, she learned of a new law school in the District of Columbia, applied, and was accepted. Accordingly, she resumed residence with her parents and at the same time resumed her citizenship in Virginia. Plaintiff's mother testified that she considered herself and plaintiff to be Virginians.

These are the relevant facts. Up to a point, the controlling law is clear. If plaintiff is a citizen of any State other than Virginia, this Court has jurisdiction. The applicable date for determining the citizenship of the plaintiff is the day on which the law suit was filed, 21 August 1978. It is the citizenship of the infant plaintiff, and not the citizenship of his next friend by whom he sues that determines the question of jurisdiction. The elements necessary to establish citizenship are the same as those to establish domicile: residence combined with an intention to remain indefinitely. Once citizenship has been established in a State, that citizenship remains established

until superseded by a new citizenship. An infant's citizenship must be determined by reference to the citizenship of some other person, because an unemancipated infant is not capable of forming the requisite intent to establish independent citizenship. See, generally, Wright, Miller & Cooper, *Federal Practice and Procedure* §§ 3612, 3613, and 3615 (1975).

Thus, the question of the Court's jurisdiction depends finally on whether the infant plaintiff is to be considered a citizen of the State of which his mother was a citizen or whether he is to be considered a citizen of the State of which his grandparents were and are citizens. If the mother's citizenship controls, the Court has jurisdiction. Plaintiff's mother had established California citizenship which she retained until sometime after this law suit was filed, despite the fact she intended to return to Virginia. If the grandparents' citizenship controls, then there is no diversity and the Court lacks jurisdiction. The plaintiff's grandparents had either never relinquished their Virginia citizenship or had re-established that citizenship before this law suit was filed.

It is settled in this Circuit that the question of plaintiff's domicile and citizenship is to be determined by reference to the federal common law. *Ziady v. Curley,* 396 F.2d 873, 874 (4th Cir. 1968). In *Ziady* an infant plaintiff sued a defendant who was a citizen of North Carolina. The plaintiff was born and reared in North Carolina and had lived in North Carolina with his parents until 1961. In 1961 his parents were divorced and custody of the plaintiff was awarded to his father, a citizen of North Carolina. Plaintiff continued to reside in North Carolina until 1964, when his father died. At that time his mother, who had acquired New Jersey citizenship, assumed custody of the plaintiff.

The district court held that the plaintiff remained a citizen of North Carolina despite the fact that the plaintiff now resided with his mother, a New Jersey citizen. The Fourth Circuit reversed, citing the rule stated in Restatement of the Law of Conflict of Laws § 38 (1934 Ed.), which states if the father dies and no guardian of his minor child's person is appointed, the child has the same domicile as the mother. The court went on to say:

We reached this result from consideration of the major rationale of diversity jurisdiction. The text writers and the cases are in accord that one of the principal purposes of diversity jurisdiction was to give a citizen of one state access to an unbiased court to protect him from parochialism if he was forced into litigation in another state in which he was a stranger and of which his opponent was a citizen. [Citations omitted.] The infant plaintiff, for all practical purposes, and for the specific purpose envisioned by the founding fathers, is a stranger to the State of North Carolina. He had not resided there since his father's death, and there is little likelihood that he will resume there a permanent residence prior to his majority. If the element of parochialism were to enter into the disposition of a suit in North Carolina state court, we think that the infant plaintiff would be considered, *de facto,* a citizen of New Jersey. [396 F.2d at 875]

The present case is, of course, readily distinguishable from *Ziady.* The problem presented by *Ziady* is that a strict application in the instant case of the rule found in the Restatement would result in a holding that the plaintiff's domicile is that of his mother, whereas consideration of the policy underlying diversity jurisdiction as explicated in *Ziady* would just as clearly result in a holding that plaintiff's domicile is that of his grandparents.

The advantages of a strict rule that the domicile of an infant whose parents have been divorced or separated is, for federal diversity jurisdictional purposes, the domicile of the parent to whom custody has been legally given are apparent. Such a rule would be fixed and certain, and the inquiry necessary to determine the infant's domicile would be relatively simple. However, it is clear that in *Ziady* the Court of Appeals adopted the Restatement rule applicable to that case only because the result obtained

by the application of that rule comported with the policies underlying diversity jurisdiction. A result so obtained in the present case would in no way comport with the policy underlying diversity jurisdiction, and therefore the Restatement rule may not blindly be followed.

Neither the plaintiff in this case, his mother, nor his grandparents is a stranger to Virginia. Plaintiff was born in Virginia and has spent all of his life in this Commonwealth except for a one-year stay in California. Plaintiff's mother considers herself a Virginian, and plaintiff's grandparents are Virginia citizens and were Virginia citizens at the time this suit was filed. Moreover, although plaintiff's mother was apparently awarded custody of plaintiff, it is clear that plaintiff's mother was not exercising control and did not have actual custody of the plaintiff at the time this suit was filed. The record clearly reflects the fact that plaintiff's grandparents were and had been acting *in loco parentis* in providing for plaintiff's support, maintenance, protection and guidance at the time this suit was filed. Plaintiff's grandparents made the important decisions affecting plaintiff's well-being without any reference to plaintiff's mother. Under these circumstances, the Court holds that the citizenship of the plaintiff for federal diversity jurisdiction purposes should be considered the same as the citizenship of plaintiff's grandparents.

These considerations lead the Court to hold that the courts of Virginia would not view plaintiff in this matter as a stranger. Nor would it so view any person who could conceivably be considered his custodian. Thus, the clearly enunciated policy in *Ziady* which underlies diversity jurisdiction will not support jurisdiction in this case. Accordingly, the Court holds that there is no diversity of citizenship between the parties to this law suit and thus the Court lacks subject-matter jurisdiction over this action.