Gregory H. LINVILLE, Gary Linville and Marcie Linville, Plaintiffs,

v.

Michael PRICE, Defendant.

Civ. A. No. 82–3281.

United States District Court,
S.D. West Virginia,
Huntington Division.

July 22, 1983.

James S. Arnold, Charleston, W.Va., Rodger L. Montgomery, Lansing, Mich., for plaintiffs.

D.C. Offutt, Jr., Huntington, W.Va., for defendant.

## MEMORANDUM OPINION AND ORDER

STAKER, District Judge.

This is an action to recover for personal injuries sustained by Gregory Linville in a car wreck which occurred in Lincoln County, West Virginia, in August, 1980, while he was a passenger in a car driven by the defendant. Plaintiffs Gary Linville and Marcie Linville are Gregory Linville's parents and are suing to recover medical expenses incurred by him as a result of the accident. Jurisdiction of this court is alleged to be based on 28 U.S.C.A. § 1332(a) in that the plaintiffs are all residents of the State of Michigan and defendant is a resident of the State of West Virginia. The defendant has filed a motion to dismiss for lack of subject matter jurisdiction, Fed.R. Civ.P. 12(b)(1), on the ground that at the time of the filing of the complaint the plaintiff Gregory Linville was a citizen of the State of West Virginia and therefore there is not complete diversity between all plaintiffs and the defendant and consequently this court does not have jurisdiction to try this action.

The facts of this case, based upon depositions and answers to interrogatories filed herein, are as follows. Gregory Linville was born in West Virginia in June, 1964, while his parents were residents of Lincoln County, West Virginia. Approximately a year later the father, Gary Linville, moved to Michigan and sometime after that Gregory Linville joined his parents in Michigan. However, he did not remain with his parents but returned to live with an aunt and uncle in Lincoln County. He continued to live with his aunt and uncle except for occasional visits to his parents in Michigan. The parents moved back to West Virginia in 1970 but returned to Michigan sometime in 1972. Gregory did not move to Michigan with his parents but continued to live with his aunt and uncle. He attended school in Lincoln County through the tenth grade after which he quit school—approximately May or June, 1980. He never attended school in Michigan. He would visit his parents in Michigan during the summer months while on vacation from school but always returned to West Virginia to continue his education.

While Gregory Linville resided with his aunt and uncle they alone provided for his support. The only contributions for his support that his parents made were during his visits with them and his inclusion in his father's health insurance coverage. His aunt and uncle purchased two cars for him during the time he lived with them.

After he quit school in 1980 at age 16, Gregory continued to reside with his aunt and uncle and was doing so at the time of the accident in August, 1980. The accident occurred in Lincoln County not far from his home. After the accident he remained at his aunt and uncle's residence with occasional visits to his parents in Michigan. These visits would be of varying duration but none were longer than a couple of months. He always returned to West Virginia and was apparently living here at the time this suit was instituted.

Prior to the accident, Gregory began dating a woman who resided in Boone County, West Virginia, and would sometimes live

with her. Gregory and this woman are the parents of two children; the first born October, 1981, while he and the mother were living with his aunt, and the second born September, 1982. Gregory was with his parents in Michigan when the second child was born but returned to his aunt's home soon thereafter and continues to reside there to this time with his paramour and his children.

The plaintiff essentially has never been employed: he has never been employed in Michigan. He has never filed an income tax return. And he is not registered to vote.

The accident involved in this suit occurred while the plaintiff was a minor. However, the suit was not instituted until August, 1982, two months after he reached his majority. The issue is what state was Gregory Linville a citizen of at the time of the filing of the complaint—West Virginia or Michigan. If he was a citizen of the former than this court does not have jurisdiction over his claim under 28 U.S.C.A. § 1332(a) because there is not complete diversity between all the plaintiffs and the defendant. *Gavin v. Read Corp.,* 356 F.Supp. 483 (E.D.Pa.1973).

■ For diversity jurisdiction purposes citizenship is equated with domicile. *Webb v. Nolan,* 361 F.Supp. 418 (M.D.N.C.1972), *aff'd per curiam,* 484 F.2d 1049 (4th Cir. 1973), *appeal dismissed* 415 U.S. 903, 94 S.Ct. 1397, 39 L.Ed.2d 461 (1974); *Jardine v. Intehar,* 213 F.Supp. 598 (S.D.W.Va.1963). And citizenship is determined as of the date the suit is instituted. *Kaiser v. Loomis,* 391 F.2d 1007 (6th Cir.1968); *Webb v. Nolan, supra.*

Defendant contends that even though Gregory Linville was a minor at the time of the accident and, therefore, by operation of law, his domicile was that of his father— Michigan—his domicile was West Virginia at the time of the institution of the lawsuit because he was then physically present in this state and his intent was to remain here indefinitely. *Kaiser v. Loomis, supra.* Plaintiff argues, however, that although he was physically present in West Virginia at the time of filing he had no firm intention as to where he would live, West Virginia or Michigan. Since he had no intent his prior domicile would continue in effect. *Jardine v. Intehar, supra.* That prior domicile would be Michigan because until two months before filing the complaint he had been a minor and therefore his domicile was that of his father.

■ Generally a minor's domicile is that of the parent. *Mears v. Sinclair,* 1 W.Va. 185 (1865); *See, Elliott v. Krear,* 466 F.Supp. 444 (E.D.Va.1979); *Allen v. Maryland Casualty Co.,* 259 F.Supp. 505 (W.D.Va. 1966). That domicile will continue in effect after majority until the child establishes a new domicile of choice, which requires a new place of residence plus intent to remain. *See, Allen v. Maryland Casualty Co., supra.* In this case, based upon his deposition, it is not possible to determine if Gregory Linville had any intent when he attained majority as to where he would live. Therefore, if plaintiff's argument is accepted, he was a domiciliary of Michigan at the time of institution of this action and diversity does exist.

In the Fourth Circuit domicile is determined by looking to the federal common law. *Ziady v. Curley,* 396 F.2d 873 (4th Cir.1968); *Elliott v. Krear,* 466 F.Supp. 444 (E.D.Va.1979). This court does not believe that Gregory Linville was a domiciliary of Michigan prior to his attainment of majority. It holds that he was domiciled in West Virginia when he was a minor, based upon *Elliott v. Krear, supra.* In *Elliott,* the question was what was the domicile of a child who was a minor at the time of injury and at the time the complaint was filed. Whether or not the court had diversity jurisdiction depended upon the answer to that question. Although the child's mother, a citizen of California at all pertinent times, had legal custody, the child actually lived with his grandparents. They provided for his support and had him in their actual custody and control. The grandparents were citizens of Virginia as was the defendant.

The court first looked to the purpose of diversity jurisdiction which, citing *Ziady, supra,* it said "was to give a citizen of one state access to an unbiased court to protect him from parochialism if he is forced into litigation in another state in which he was a stranger and of which his opponent was a citizen." 466 F.Supp. at 446. The court then spoke of how the infant plaintiff was not a stranger to Virginia because he had been born there and lived all of his life, except for one year, there. Furthermore, the grandparents, who were acting *in loco parentis,* were also citizens of Virginia. It then said:

> Under these circumstances, the Court holds that the citizenship of the plaintiff for federal diversity jurisdiction purposes should be considered the same as the citizenship of plaintiff's grandparents.

> These considerations lead the Court to hold that the courts of Virginia would not view plaintiff in this matter as a stranger.

466 F.Supp. at 447. Therefore, the purpose underlying diversity jurisdiction would not support jurisdiction. *Id.*

■ This court believes the situation before it is sufficiently analogous to that in *Elliott* to support the application of its reasoning here. The plaintiff spent most of his minority in West Virginia. He lived with an aunt and uncle who were citizens of West Virginia. He was essentially in their custody and control and they provided for his support and maintenance. They were acting *in loco parentis.* These facts alone would establish his domicile as West Virginia. However, there are other factors that support the court's finding. All of plaintiff's schooling was obtained in West Virginia. Furthermore, he never lived in Michigan for any extended period of time and always returned to West Virginia. But foremost, while he was a minor he fathered a child in this State and resided with that child in this State up to the time he reached his majority.

Based upon these circumstances, the court holds that Gregory Linville's domicile, prior to attaining his majority, was the same as that of the aunt with whom he lived—*i.e.,* West Virginia. Furthermore, he did not change his domicile to Michigan after attaining his majority. Therefore, the plaintiff's citizenship for federal diversity jurisdiction purposes, at the time this suit was instituted, was West Virginia. Consequently, the courts of West Virginia would not view the plaintiff as a stranger and the policy underlying diversity jurisdiction, as stated in *Ziady* and *Elliott,* will not support jurisdiction in this case. Accordingly, the court holds that there is no diversity of citizenship between the plaintiff Gregory Linville and the defendant and therefore this court lacks jurisdiction over his claim.

■ The plaintiffs' attorney, with admirable candor, has represented to the court that the claims of Gary Linville and Marcie Linville do not exceed the $10,000 jurisdictional amount required by 28 U.S.C.A. § 1332(a) for diversity jurisdiction. When it appears to the court at the suggestion of one of the parties that it does not have jurisdiction, dismissal is required. *Griffin v. Matthews,* 310 F.Supp. 341 (M.D.N.C. 1969), *aff'd per curiam,* 423 F.2d 272 (4th Cir.1970). This dismissal is mandatory and is not dependent on a motion for voluntary dismissal by the plaintiff. *Hylte Bruks Aktiebolag v. Babcock & Wilcox Co.,* 305 F.Supp. 803 (S.D.N.Y.1969). Therefore, the claims of Gary Linville and Marcie Linville must also be dismissed for lack of jurisdiction over the subject matter.

Defendants' Motion to Dismiss is GRANTED and the complaint is hereby DISMISSED.

The clerk of the court is directed to mail a certified copy of this Order to all counsel of record.