**Wilfredo RODRIGUEZ–DIAZ,**
**Plaintiff, Appellant,**

v.

**Marcelo SIERRA–MARTINEZ, et al.,**
**Defendants, Appellees.**

No. 87–1700.

United States Court of Appeals,
First Circuit.

Heard Feb. 1, 1988.

Decided Aug. 10, 1988.

Keith A. Graffam, with whom Charles A. Cordero and Cordero, Miranda & Pinto, Old San Juan, P.R., were on brief, for plaintiff, appellant.

Roberto O. Maldonado, with whom Cancio, Nadal & Rivera, San Juan, P.R., was on brief, for defendants, appellees.

Before CAMPBELL, Chief Judge, and TORRUELLA and SELYA, Circuit Judges.

LEVIN H. CAMPBELL, Chief Judge.

Plaintiff Wilfredo Rodriguez Diaz (Rodriguez Diaz) appeals from an order of the United States District Court for the District of Puerto Rico dismissing his complaint for negligence and medical malpractice for lack of diversity jurisdiction. Rodriguez Diaz brought this action in the district court following a motor vehicle accident in Puerto Rico when he was 17 years of age. All the defendants reside in Puerto Rico. However, between the time of the accident and the commencement of this action, Rodriguez Diaz moved from his family's home in Puerto Rico to New York, and attained his 18th birthday. He then sued in the United States District Court for the District of Puerto Rico, on his own behalf and through his parents as next friends, alleging that he is a citizen of New York and that there is diversity of citizenship under 28 U.S.C. § 1332 (1982).

## I.

The facts relevant to the jurisdictional issue are these: On November 21, 1984, Rodriguez Diaz, while operating a motorcycle in Caguas, Puerto Rico, was in a collision with an automobile driven by Marcelo Sierra Martinez. Rodriguez Diaz suffered bodily injuries. He was immediately taken to the Hospital Regional de Caguas, from where he was transferred to the Centro Medico for emergency treatment. Rodriguez Diaz alleges in the present complaint that the treatment he received at the Centro Medico caused him to suffer a massive bone infection and aggravation of a leg injury. From Centro Medico he was transferred to Hospital General San Carlos where he alleges he also received improper treatment. Sometime later, Rodriguez Diaz was transferred to a hospital in New York City. He alleges he was living in New York at the time he brought this action in the United States District Court for the District of Puerto Rico. He further alleges in his complaint that he intends to remain in New York and make it his permanent home, and that he is now domiciled there. Rodriguez Diaz had turned 18 by

the time he brought this action.[1] His parents were and still are residents and domiciliaries of Puerto Rico, where the age of majority is 21. P.R. Laws Ann. tit. 31, § 971 (1967).

The defendants in the action brought by Rodriguez Diaz were the driver of the automobile, Sierra Martinez, and two Puerto Rico hospitals, all of whom are residents and domiciliaries of Puerto Rico. The defendants moved in the United States District Court for the District of Puerto Rico where the action was brought to dismiss the complaint for lack of diversity jurisdiction. The district court concluded that, under Puerto Rico law, Rodriguez Diaz is a minor, and, therefore, his domicile is that of his parents. 665 F.Supp. 96 (D.P.R. 1987). Ruling that as a matter of law Rodriguez Diaz's domicile at the time of the filing of this action was Puerto Rico, the court dismissed the complaint for lack of diversity. This appeal followed.

In its decision, the district court observed that, for purposes of diversity jurisdiction under 28 U.S.C. § 1332(a)(1), state citizenship and domicile are equivalents. The court also noted that in a diversity case the capacity of a person to sue or be sued is determined by the law of the state of the litigant's domicile. Fed.R.Civ.P. 17(b). The court then made certain observations crucial to its analysis. These were that the citizenship of a minor was the citizenship of his parents, and that the latter's domicile determined whether the minor had become emancipated so that he could establish a domicile of choice elsewhere. 665 F.Supp. at 98–99. On the basis of the foregoing, the district court concluded that the law of Puerto Rico—the home of Rodriguez Diaz's parents—controlled the issue of Rodriguez Diaz's present domicile. As under Puerto Rico law plaintiff was still a minor, being under 21 at the time of suit, and as he was

unemancipated under Puerto Rico law, he could not establish a domicile of choice outside Puerto Rico. It followed that he was still a domiciliary of Puerto Rico, and that, therefore, there was no diversity of citizenship. *Id.*

## II.

While the case is close, we disagree with the district court's conclusion that the domicile of Rodriguez Diaz's parents—Puerto Rico—is the jurisdiction whose law must necessarily determine his capacity to acquire a domicile of choice.

We begin with certain generally accepted principles: As the lower court correctly noted, state citizenship [2] for diversity purposes is ordinarily equated with domicile. *Hawes v. Club Ecuestre El Comandante*, 598 F.2d 698, 701 (1st Cir.1979). A person's domicile "is the place where he has his true, fixed home and principal establishment, and to which, whenever he is absent, he has the intention of returning." C. Wright, A. Miller & E. Cooper, 13 B *Federal Practice & Procedure* § 3612, at 526 (1984). Domicile generally requires two elements: 1) physical presence in a state, and 2) the intent to make such a state a home. J. Moore, J. Lucas, H. Fink, D. Weckstein & J. Wicker, 1 *Moore's Federal Practice* ¶ 0.74[.3–1] (1988). It is the domicile at the time suit is filed which controls, and the fact that the plaintiff has changed his domicile with the purpose of bringing a diversity action in federal court is irrelevant. *Id.* at ¶ 0.74[3.–1]. Thus, except for the possible effect of his being a minor under Puerto Rico law, plaintiff's settling in New York with the requisite domiciliary intent would make him a citizen of New York and entitle him to pursue this action.

---

1. The age of majority in New York is 18. N.Y. Civ.Prac.L. & R. 105(j) (Supp.1988).

2. Section 1332(a)(1) provides,
   The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $10,000, exclusive of interest and costs, and is between—

   (1) citizens of different States;
   ....
   Section 1332(d) provides,
   The word "States" as used in this section includes the Territories, the District of Columbia, and the Commonwealth of Puerto Rico.

The district court ruled that since plaintiff was under 21, the age of majority in Puerto Rico, he was a minor as a matter of law, and as such he could have only one domicile, that of his parents, which in this case is Puerto Rico. It so ruled even though the age of majority in New York is 18, so that, in the eyes of New York, plaintiff could acquire a personal domicile of his own there. We shall assume for purposes of resolving the legal issue raised in this appeal that New York is plaintiff's "true, fixed home."[3] C. Wright, A. Miller & E. Cooper, 13 B *Federal Practice & Procedure* § 3612, at 526. The question before us is whether this is enough for plaintiff to have acquired a New York domicile for diversity jurisdiction purposes.

■ The parties and the district court have framed the issue as one of choice of law: which law is applicable, Puerto Rico law or New York law. It is a general principle of common law, recognized also in Puerto Rico, P.R. Laws Ann. tit. 1, § 8 (1967), that the domicile of an unemancipated minor is ordinarily that of his parents. The age of majority in Puerto Rico is 21, P.R. Laws Ann. tit. 31, § 971 (1967), while in New York it is 18. N.Y.Civ.Prac. L. & R. 105(j) (Supp.1988). Plaintiff was 18 when he filed this action in the United States District Court for the District of Puerto Rico. Depending on which law is applied, the argument goes, Rodriguez Diaz will be treated as an adult or as a minor, with the capacity or lack of capacity to establish his own independent domicile. Plaintiff argues that we have to apply New York law, because that was his "domicile" at the time the action was filed. Not surprisingly, defendants argued, and the district court agreed, that whether Rodriguez Diaz was an adult with capacity to establish his domicile of choice is governed by Puerto Rico law.

■ As we see it, resolution of the issue before us does not and should not turn solely upon a conflicts of laws analysis. Although federal courts have to apply the choice of law rules of the forum to determine the substantive law in diversity cases, *Klaxon Co. v. Stentor Electric Manufacturing Co.*, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941); *Day & Zimmermann, Inc. v. Challoner*, 423 U.S. 3, 96 S.Ct. 167, 46 L.Ed.2d 3 (1975), the "determination of litigant's state citizenship for purposes of section 1332(a)(1) is controlled by federal common law, not by the law of any state." *Kantor v. Wellesley Galleries, Ltd.*, 704 F.2d 1088, 1090 (9th Cir.1983). The issue of what substantive law applies in a diversity case "is surely a different problem from that of whether a litigant should have access to federal court, and it does not conduce to clarity of analysis to suppose that the same answers will suffice for different questions." C. Wright, *The Law of Federal Courts* § 26, at 147 n. 4 (1983). As stated by the Fourth Circuit,

> The question of domicile can arise, in regard to the diversity clause of Article III, § 2 of the Federal Constitution and under 28 U.S.C. § 1332, only in federal court. The problem is, therefore, one uniquely of federal cognizance and the considerations underlying *Erie R.R. Co. v. Tompkins*, 304 U.S. 64 [58 S.Ct. 817, 82 L.Ed. 1188] (1938), do not obtain.

*Ziady v. Curley*, 396 F.2d 873, 874 (4th Cir.1968). That does not mean that state law and state conflicts rules regarding domicile should be ignored. At very least, they are "useful in providing basic working definitions." *Stifel v. Hopkins*, 477 F.2d 1116, 1120 (6th Cir.1973). However, as the Sixth Circuit pointed out in *Stifel*, the considerations undergirding state choice-of-law rules have often been "developed in such

---

**3.** We emphasize, however, that the district court did not make a finding that Rodriguez Diaz (assuming he had the legal capacity to obtain a New York domicile) actually met the elements necessary to acquire a domicile there. To the extent there may be a genuine issue of fact as to plaintiff's "true, fixed home" and actual intention, our present assumption, arguendo, that his presence in New York meets these require-ments, should not be taken as a final resolution of that issue. The only issue the district court addressed, and the only issue now before us, is whether, for diversity purposes, Rodriguez Diaz could have a domicile separate from that of his parents. We leave open the factual issue of whether plaintiff actually met the elements necessary to acquire a domicile of choice in New York.

diverse contexts as probate jurisdiction, taxation of incomes or intangibles, or divorce laws." *Id.* Choice-of-law formulae, therefore, cannot be the sole guideposts when determining, for federal diversity purposes, whether a party is domiciled in one or another state. *Id.* at 1126. The ultimate decision must be such as will best serve the aims of the federal diversity statute and the perspectives of a nationwide judicial system.

### III.

In the case at bar, the district court noted that in a suit brought by the next friend, the minor's domicile was controlling for diversity purposes. The court went on to state,

> Under the common law, the citizenship of a minor is the citizenship of his parents, and to determine whether the minor has become emancipated so that he may establish a domicile of choice, we look to the law of the state of the citizenship of the parents. *Spurgeon v. Mission State Bank*, 151 F.2d 702, 703 (8th Cir.1945).

665 F.Supp. at 98. After noting the dilemma caused by the fact Rodriguez Diaz had achieved majority status in New York, his present home, at age 18, while remaining a minor under Puerto Rico law, the court rejected plaintiff's argument that he had the capacity to acquire a domicile of choice in New York. The court stated, "[w]e have already concluded that the law of Puerto Rico controls the issue of Wilfredo's [Rodriguez Diaz's] domicile." *See supra.*

The district court went on to show that, by Puerto Rico's standards, plaintiff was unemancipated, given Puerto Rico's strict civil law requirement that emancipation occur by formal notarized document. 665 F.Supp. at 99.

The difficulty with this rationale, as we see it, lies in the court's basic premise that the law of Puerto Rico controls. If Rodriguez Diaz were clearly a minor (under, say, both New York and Puerto Rico law), the court's analysis would be hard to fault. The domicile of a minor is commonly regarded as that of his parents; as Rodriguez Diaz's parents were domiciled in Puerto Rico, the law of Puerto Rico would ordinarily be controlling as to the means whereby, being a minor, he could be emancipated and so become free to acquire a domicile of choice.[4]

The problem here, however, is that the question is not whether, as a minor, plaintiff was emancipated, but whether *he is a minor.* That, in turn, depends upon a determination of where he is domiciled, the ultimate question. We do not, therefore, find the district court's analysis persuasive.

■ This is not to say that Puerto Rico may not properly believe that the interest it has in its own citizens includes a legitimate concern as to the age at which a minor child reaches majority. Whether and when a person has legal capacity to, among other things, sue in Puerto Rico's own courts, make contracts, dispose of property, and sustain himself without parental support or reciprocal duty owed to his parents, are all matters properly within the state's province. However, local interests of this char-

---

**4.** We agree that, ordinarily, if a person is under 18, federal courts should follow the common law principle that he is incapable of choosing his own domicile. There is a general understanding that a person under 18 lacks the full capacity to conduct his life as he will. The years between 18 and 21, however, are currently a twilight zone. The majority of the states have adopted 18 as the age of majority. C. Wright, A. Miller & E. Cooper, 13 B *Federal Practice & Procedure* § 3615, at 563 (1984). A person 18 or older has the constitutional right to vote in federal and state elections. U.S. Const. amendment XXVI. Nonetheless, some states, like Puerto Rico, still consider a person under 21, but 18 or older, to be incapable (unless formally emancipated) of conducting his personal life.

Although this policy is entitled to respect in federal courts for substantive law purposes, we see no necessary reason to give it special deference for diversity jurisdictional purposes when it conflicts with another state's policy judgment that an 18 year old living within its borders is of legal age and fully capable of choosing the place he regards as home. Puerto Rico, in fact, recognizes that a child may be emancipated with parental consent and, thereafter, although under age, will be capable of choosing a domicile of his own. It is generally recognized that even persons lacking the capacity to enter into contracts and other legal arrangements may have sufficient capacity to select a domicile of choice. R. Weintraub, *Commentary on the Conflicts of Laws* § 2.4, at 18 (1980).

acter are not in issue here. Rodriguez Diaz's right of access to a federal court is "one uniquely of federal cognizance." *Ziady v. Curley*, 396 F.2d at 874; and since Rodriguez Diaz is now physically present in New York, which regards him, at 18, as having the capacity to be its domiciliary, we must weigh a ruling that would extend Puerto Rico's less favorable policy towards 18 year olds against one that would accord to plaintiff the mature status he enjoys under the law of the state in which he now resides.

In any event, the court below erred in assuming at the very outset of its inquiry that Rodriguez Diaz was a minor and, on that basis, invoking the law of his parents' domicile in preference to that of his present physical residence, which does not view him as a minor.

A similar logical difficulty occurs when we turn to the alternative approaches urged by appellees. For example, appellees point to Section 9 of the Puerto Rico Civil Code providing that,

> The laws relating to family rights and obligations or to the status, condition and *legal capacity* of persons, shall be binding upon the citizens of Puerto Rico, although they reside in a foreign country.

P.R. Laws Ann. tit. 31, § 9 (1967) (emphasis supplied). Appellees argue that this article provides that the issue of plaintiff's legal capacity is governed by Puerto Rico law. The problem is, however, that the term "citizens of Puerto Rico" has been defined by the Supreme Court of Puerto Rico as equivalent to domicile. *Lopez v. Fernandez*, 61 P.R.R. 503 (1943). Therefore, whether Section 247 of the Civil Code, P.R. Laws Ann. tit. 31, § 971—which provides that the majority age in Puerto Rico is 21—applies to Rodriguez Diaz will depend on where he is domiciled. Since this is the ultimate issue in contention, the approach does nothing to assist our resolution of the dispute.

The fact is, there is no purely logical way out of the dilemma. We cannot decide whether plaintiff is a minor under Puerto Rico law or an adult pursuant to New York law, without first determining where he is domiciled. On the other hand, we cannot make a determination whether he has the capacity to establish his own domicile without first knowing if he has reached the age of majority. We have, therefore, come full circle. To know if he has the legal capacity to establish his domicile of choice we need to know if he is an adult. But to determine whether he is an adult or a minor we first have to know where he is domiciled.

There is, to be sure, a possible way out of this circle under formal conflict of laws principles. We could apply forum law to determine Rodriguez Diaz's legal capacity. *Restatement of the Law, Conflicts of Law (Second)*, §§ 13 and 15(a) (1971).[5] This might be a proper resolution had the question of plaintiff's domicile arisen in a Commonwealth of Puerto Rico court, where the question of domicile is likely to implicate local matters over which Puerto Rico has the final say. But we do not think the *lex forum* provides a satisfactory resolution where the overriding and ultimate question is plaintiff's *citizenship* for purposes of federal diversity jurisdiction. 28 U.S.C. § 1332(a). Federal district courts sit throughout the nation. While it is unlikely a tort action like this, based on an accident in Puerto Rico, with all defendants residing there, could be pursued elsewhere than in the District of Puerto Rico, plaintiff could be involved in other federal diversity cases in other federal district courts, including the district courts located in New York. Were we to apply the rule of *lex forum*, Rodriguez Diaz could be viewed at one and the same time, and within the same judicial system, as both a citizen of New York and a citizen of Puerto Rico. That this is even theoretically possible suggests the unsatisfactoriness of determining state citizenship here, *for federal diversity purposes*, on the basis of *lex forum*. Rodriguez Diaz,

---

**5.** "[A] person cannot acquire a domicil of choice unless he has legal capacity to do so. Whether such legal capacity exists will be determined by the law of the forum." *Restatement of the Law, Conflicts of Law (Second)* § 13, comment d.

we think, must be a "citizen" of one or the other state—not of both simultaneously.

We do not, moreover, see any compelling reasons of policy for adopting the law of the forum here. As pointed out already, while Puerto Rico doubtless has legitimate reasons for regulating persons such as plaintiff in respect to the making of contracts, property dispositions, support, and the like in Puerto Rico, it has little if any interest, based simply on the continuing presence of his parents in Puerto Rico, in denying to Rodriguez Diaz, while physically residing in New York, the right to sue under the diversity jurisdiction in a federal district court whether in Puerto Rico or elsewhere. While not crucial to our result, we also note that even plaintiff's parents have joined him in bringing this action: thus the parents' separate interests provide no reason to deny him the right to sue in a federal court.[6] In brief, a mechanical recourse to the *lex forum* does not strike us as a thoughtful solution to the current dilemma.

## IV.

■ Since neither pure logic nor conflict rules provide a meaningful solution, we feel free to make the choice we think fits best with the aims of the diversity statute and the national character of the federal judicial system. We hold that Rodriguez Diaz is a domiciliary of the State of New York—or, rather, that, if he can satisfy the district court that he meets the requisite factors of physical presence and intent, he is entitled to be a New York domiciliary for

diversity purposes notwithstanding his minority status under Puerto Rico law. In reaching this result, we focus upon the physical and mental aspects of plaintiff's own situation, rather than imposing upon him a disability foreign to the law of the state where he now resides and having little meaning in this situation even to the place—Puerto Rico—whose law calls for it. To hold that one who meets all the domiciliary requirements (including capacity) of the state where he currently resides is a citizen of that state, seems clearly the most reasonable result here.

Our approach is consistent with that of other federal courts. As we earlier noted, it is well established that the determination of domicile under 28 U.S.C. § 1332(a) is a problem "uniquely of federal cognizance," *Ziady v. Curley,* 396 F.2d at 874. While in the ordinary case, relevant rules of state law provide the basis for the applicable federal common law, federal courts will deviate if necessary in order to achieve the purposes of the diversity statute[7] and, sometimes, simply to achieve a more equitable and coherent result.[8] Not surprisingly, a number of cases have arisen from the tension, as here, between technical presumptions as to the domicile of a minor and the realities of the minor's actual situation.

In the present case, there are perhaps no urgent reasons of federal diversity policy comparable to those found by the courts in *Ziady v. Curley, Elliott v. Krear,* and *Linville v. Price.* See note 7, *supra.* Since Rodriguez Diaz is recently from Puerto

---

6. There would, of course, be no diversity jurisdiction as to any claim of the parents, who reside in Puerto Rico. The parents sue here solely as next friends; their domicile is irrelevant in such circumstances. *See Ziady v. Curley,* 396 F.2d at 874 n. 1; C. Wright, A. Miller & E. Cooper, 13B *Federal Practice & Procedure* § 3615.

7. *See, e.g., Ziady v. Curley,* 396 F.2d 873 (4th Cir.1968) (in deciding infant plaintiff's domicile, the court took into account a major purpose of diversity jurisdiction, which is to protect a citizen of one state from parochialism if forced to litigate in another state); *Linville v. Price,* 572 F.Supp. 345 (S.D.W.Va.1983); *Elliott v. Krear,* 466 F.Supp. 444 (E.D.Va.1979).

8. *Bjornquist v. Boston & A.R. Co.,* 250 F. 929 (1st Cir.), *cert. denied,* 248 U.S. 573, 39 S.Ct. 11, 63 L.Ed. 427 (1918). In that case, this circuit refused to follow the common law rule that a minor could not establish his own domicile for diversity purposes: the minor's parents were dead, and plaintiff's domicile was technically that of his deceased father. Nonetheless, we found that he had acquired a Maine domicile when he moved there when 19 for a relatively brief sojourn with an aunt. *See also Stifel v. Hopkins,* 477 F.2d 1116 (6th Cir.1973) (a prisoner may show a change of domicile to a state to which he was moved by his jailers notwithstanding old rule that the pre-incarceration domicile of a prisoner must continue during his imprisonment).

Rico, and his parents reside there, it is unlikely he would encounter prejudice were he forced to sue in Puerto Rico's own courts. The more realistic comparison, however, may be between the relative unfairness of denying a federal forum to Rodriguez Diaz while granting it to another young Puerto Rican of similar age whose parents moved to New York with him. Federal diversity jurisdiction exists as a matter of right for those who meet the statutory criteria, whether or not the plaintiff would actually encounter prejudice in the courts of another state. Federal courts should not, therefore, deny the right on the basis of pointless technicalities. In this case, if Rodriguez Diaz, being physically present in New York, qualifies under regular domiciliary rules as a domiciliary of New York, we do not think the difference in law between his former domicile, Puerto Rico, and New York concerning the age of majority should deny him the right to sue as a citizen of New York in federal court.

We emphasize, as already stated, *see* note 3, *supra*, that we do not purport to decide here whether Rodriguez Diaz, in fact, meets the requirements for domicile in New York. Obviously he must be prepared, among other things, to demonstrate the requisite intent. We say only that he should be treated no differently than if, having been in the same accident and then moving to New York, he were 21 at the time he sued. In such a case, he would still have to establish that his move involved a genuine change in domicile.

*Vacated and remanded for further proceedings not inconsistent herewith.*

TORRUELLA, Circuit Judge (dissenting).

With due respect I believe the majority has reached the wrong result, and that, by a circuitous route. Its conclusion is inevitable because its reasoning commences by "assum[ing] for purposes of resolving the legal issues raised in this appeal that New York is plaintiff's 'true, fixed home.'"

*Ante* at 1030 (footnote and citation omitted). I believe this is a fallacious assumption because it improperly shifts the focus of analysis.

Since the only undisputed fact in this case is that plaintiff was domiciled in Puerto Rico to begin with, it seems to me that the logical starting point is determining how plaintiff could change his domicile from Puerto Rico to New York. The answer to that question, in the context of this case, raises an issue of *capacity*, not one of intention. Since there is no case in which a change in domicile has taken place without, at the very least, a physical departure from the place of original domicile, and it is legally impossible to acquire a new domicile without first loosing the old one, we must determine the legal significance of such action in that jurisdiction; *i.e.*, Puerto Rico. The issue thus is what, if any, is the legal significance, for change of domicile purposes, of an 18 year old resident of Puerto Rico leaving that jurisdiction.

The answer under Puerto Rican law is clear: none. An 18 year old is considered a minor in Puerto Rico. 31 L.P.R.A. § 971 (1967). The domicile of an unemancipated minor is that of his parents, 1 L.P.R.A. § 8(4), or in appropriate cases, his guardian, *id.* § 8(6). *See also López v. Fernández*, 61 P.R.R. 503 (1943). A minor can be emancipated, thus allowing him to acquire a separate domicile from his parents or guardian, only by either parent (or both if they jointly exercise the *patria potestas*) appearing before a civil law notary[9] in the presence of two witness, and, with the minor's consent, signing an emancipation deed. 31 L.P.R.A. § 911 (Supp.1985). Unless this formal proceeding is effectuated *beforehand*, a Puerto Rico-domiciled minor *lacks legal capacity* to change his domicile from that of his parents, or in the appropriate case, his guardian. His moving away from his legal domicile (*i.e.*, that of his parents or guardian), be that to a different location down the street, or to another place in Puerto Rico, or to another jurisdic-

9. A notary public in Puerto Rico, "a position highly imbued with the state's imprimatur," is not to be confused with a notary public as is known in common law jurisdiction. *See Schneider v. Colegio de Abogados de Puerto Rico*, 565 F.Supp. 963, 972 & n. 34 (D.P.R.1983).

tion, is legally irrelevant because he cannot gain a new domicile until one has licitly lost the old one.

That a state has a paramount interest in protecting, regulating and controlling its minor citizens is beyond cavil. The importance attached to this principle is reflected in the numerous provisions of law in Puerto Rico, commencing with its Constitution, *see* P.R. Const. Art. II, § 15, and continuing throughout its general legislation, *see, e.g.,* 31 L.P.R.A. §§ 242 (marriage), 1446 (property), 3402 (contracts) (1982). A case in point is Article 9 of its Civil Code which makes the laws "relating to family rights and obligations or to the status ... and *legal capacity* of persons ... binding upon the citizens of Puerto Rico," even if they move outside of this jurisdiction. 31 L.P.R.A. § 9 (1967) *(emphasis supplied)*. This paramount interest of a state in regulating the conduct of its minors is not, of course, limited to Puerto Rico, and protective legislation may be found throughout the United States varying in its content in a manner reflective of local interests and attitudes.

Because this is, as it should be, an area highly reflective of local attitudes, values and mores, it is particularly unsuited to federalized tinkering. Thus, the majority is mistaken in placing emphasis on the "right of access to a federal court" as the central issue raised by this appeal. *Ante* at 1032.

It is axiomatic that federal courts are courts of limited jurisdiction in which litigation is restricted to enumerated parties and causes. The Puerto Rican laws previously cited are not in any way designed to impede access to our forum. It is only by their general, non-discriminatory application that they prevent plaintiff from litigating in this court. Diversity jurisdiction, particularly in this day and age, is not in need of unnatural expansion, *see* Nat'l Law J., Feb. 29, 1988, at 1, col. 3 (discussing

recent judicial and legislative efforts to eliminate or curtail diversity jurisdiction), and especially not at the expense of important, non-selective local interests. The majority's reasoning inappropriately invades an area traditionally left to the sound discretion of state legislation.

To reach this result, the majority ignores substantial authority which indicates this issue should be resolved on the basis of state law, not "federal common law." *See* 1 J. Moore, Moore's Federal Practice, ¶ 0.74[6.–2] at 708.55 n. 2 (age of majority for purposes of diversity dependent on state law) and 708.59 (emancipation of minor for purposes of diversity determined by state law); C. Wright, A. Miller & E. Cooper, Federal Practice and Procedure, § 3615 at 562–63 (same). The majority also implicitly rejects without explanation the only precedent directly on point, cited by the district court.[10] In *Spurgeon v. Mission State Bank,* 151 F.2d 702 (8th Cir. 1945), the court determined whether a eighteen year-old minor who moved to Kansas from his parents' home in Missouri was "capable of acquiring a domicile of his choice" for purposes of diversity jurisdiction. The court determined that the appellant had acquired a domicile in Kansas by first ruling that "[w]hether the appellant was an emancipated minor at the time of his departure from the home of his parents is a question controlled by Missouri law." *Id.* at 703. That is, for purposes of determining whether an eighteen year-old had the *capacity* to acquire a domicile of choice, the court looked to the law of the jurisdiction from which the youth had *departed. See also Curry v. Maxson,* 318 F.Supp. 842, 844 (W.D.Mo.1970).

Admittedly, the above cited authority can be read to support an alternative rule of law, a rule implicitly applied by at least one court but also rejected by my brothers. In *Appelt v. Whitty,* 286 F.2d 135 (7th Cir.

---

**10.** I do not understand the basis on which the majority dismisses the district court's analysis: that is, by stating "that the question is not whether, as a minor, plaintiff was emancipated, but whether *he is a minor." Supra,* at 1031 (emphasis in original). Emancipation normally always occurs at the age of majority, *see e.g.,*

*Siravo v. Siravo,* 424 A.2d 1047, 1050 (R.I.1981) and *Fauser v. Fauser,* 50 Misc.2d 601, 271 N.Y. S.2d 59, 61 (N.Y.Fam.Ct.1966), and thus whether appellant is no longer a minor *is* a question of whether he has been emancipated and therefore able to choose a domicile.

1961), the court denied diversity jurisdiction after it used Illinois law to determine that the minor plaintiff, who had moved from Michigan to Illinois, was emancipated. Although the court gave no reason why it applied Illinois rather than Michigan law (nor did it suggest that the outcome would have been different), it appears to have used the principle of *lex loci*, since the case came on appeal from the District Court of the Northern District of Illinois. The *lex loci* approach to capacity is also the suggested approach of the Restatement (Second) Conflict of Laws (1971), as stated in comment d to its section 13, for determining capacity to acquire a domicile of choice.[11]

The Restatement also suggests that either of the two approaches discussed above be taken to govern the issue of whether a child has been emancipated. That is, the treatise suggests either that emancipation be considered a question of status to be determined pursuant to the laws of the state in which the parents lived when the alleged emancipation took place, or it be considered an issue of capacity and thus generally determined according to the laws of the forum. *See* Restatement (Second) of Conflict of Laws § 22 comment f (1971).

Therefore, if this court applied either of these approaches to the facts of this case, it would find that appellant's domicile is Puerto Rico.

The majority, however, finds all of this authority unpersuasive. Instead, it directs a district court sitting in Puerto Rico and adjudicating a case controlled by Puerto Rico law, concerning an incident occurring in Puerto Rico, and involving an individual who is unemancipated and still a minor under Puerto Rico law, to apply New York law to determine that the youth is no longer a minor (*i.e.*, emancipated) and thus able to invoke diversity jurisdiction in Puerto Rico. Most disturbingly, it adopts this approach without citing important policy considerations or supporting authority. Indeed, it admits that "there are perhaps no urgent reasons of federal diversity policy comparable to those found by the courts" in the only cases it cites as authority for ignoring "relevant rules of state law ... in order to achieve the purposes of the diversity statute." *Supra* at 1033. I would go further and state that the majority's approach is not suggested by *any* policy considerations supporting federal diversity.

"[T]he major rationale of diversity jurisdiction ... [is] to give a citizen of one state access to an unbiased court to protect him from parochialism if he was forced into litigation in another state in which he was a stranger and of which his opponent was a citizen." *Ziady v. Curley*, 396 F.2d 873, 875 (4th Cir.1968). Obviously, this purpose of diversity jurisdiction is irrelevant to a case, such as this one, involving a youth who brings suit in a jurisdiction from which he only recently departed, under whose laws he is still a citizen, and in which his parents continue to make their home. Appellant is not looking to federal court for protection from bias and parochialism but rather is forum shopping by filing in the federal jurisdiction in Puerto Rico where he is entitled to a civil *jury* trial. *Compare Elliott v. Krear*, 466 F.Supp. 444 (E.D.Va. 1979) (policy reasons underlying diversity jurisdiction not applicable when plaintiff not a stranger to the forum and thus *Ziady* not controlling and no diversity found).

Assuming there is a federal policy to make federal courts more widely available to litigants and to not "deny the right [to federal court] on the basis of pointless technicalities," *supra* at 1034, the majority's approach does not satisfy even this goal. For example, if any individual in appellant's situation now wanted to file a diversity suit against a New York citizen in

---

**11.** A preference for the *lex loci* approach is also suggested by rule 17(b) of the Federal Rules of Civil Procedure which, while stating that the "capacity of an individual ... shall be determined by the law of his domicile," also states that "[i]n all other cases [not concerning a corporation or an entity whose capacity is determined by federal law] capacity ... shall be determined by the law of the state in which the district court is held...." The rules, therefore, suggest that when domicile is not determinative, capacity should be determined according to the law of the forum.

New York (a forum much more likely to be unfriendly), he would be barred from access to federal court due to lack of diversity. Thus, the majority's approach provides neither greater access nor eliminates "pointless technicalities" as a barrier to federal court.

Perhaps most troubling about the decision of the majority is that it is presented without reliance on any rule of law. Is the majority saying that henceforth in this circuit the age of eighteen is the age of emancipation for choosing one's own domicile for purposes of diversity jurisdiction? If so, why is eighteen chosen instead of twenty-one or any other age? Or is the rule now that we will use the law of the jurisdiction to which the youth has moved, such that if a New York nineteen year-old leaves his parents and moves to Puerto Rico his domicile will remain in New York? Or is it that we use the law of the jurisdiction which has the youngest age of emancipation? Perhaps the rule is simply that we use the law of the jurisdiction which will create diversity jurisdiction.

Whatever the new rule is, I simply cannot see *why* it has been adopted at the expense of valid local interests—interests completely ignored by the majority. For instance, Puerto Rico may have a very legitimate interest in allowing parents to control the lawsuits of its citizens under the age of twenty-one. It may want parents deciding whether and in what court to bring a lawsuit. By allowing parents to determine what court a suit is prosecuted, the Commonwealth allows parents better to control the expense and scope of litigation. In some situations, parents may decide that local court *is* the better alternative.[12] Furthermore, Puerto Rico may have an interest in not encouraging a young person to leave home to establish domicile elsewhere so as to bring a suit in federal court contrary to the wishes of those ultimately responsible under its law for that youth.

Because the majority (1) does not begin its analysis at the only logical starting point—whether appellant had capacity to change his domicile; (2) refuses to apply the only other accepted approach to this type of issue—the law of the forum; and (3) offers no policy justification for ignoring local interests in deciding this case without reference to an appropriate rule, I dissent.

---

12. Interestingly enough plaintiff has been joined by his parents, Puerto Rican residents, in this suit.