CFSC CONSORTIUM, LLC, et al., Plaintiffs,

v.

Angel FERRERAS–GOITIA, et al., Defendants/Third-party Plaintiffs,

v.

The Farm Credit Bank of Baltimore, et al., Third-party Defendants.

CIVIL NO. 00–1119 (DRD).

United States District Court, D. Puerto Rico.

March 28, 2002.

118

Hector A. Santiago–Romero, Torre de Santander, San Juan, PR, Ivonne Palerm-

Cruz Department of Justice of PR, Federal Litigation Division, San Juan, PR, Javier I. Arbona, O'Neill Fernandez Gilmore & Perez Ochoa, P.S.C., San Juan, PR, for CFSC Consortium, LLC., Pramco, LLC, Midwest Holdings Corporation.

Carlos A. Piovanetti–Rivera, Hato Rey, PR, for Angel Ferreras–Goitia, Ana Amalia Bosch–Velez, Conjugal Partnership Ferreras–Bosch.

Esteban Garcia–Malatrasi, San Juan, PR, Carlos C. Santiago–Gonzalez, San Juan, PR, for The Farm Credit Bank of Baltimore.

Raul J. Tous-Bobonis, Hato Rey, PR, Jose A. Tulla, San Juan, PR, for Felipe Lebron–Cristy, Zaida Bonilla–Valentin, Conjugal Partnership Lebron–Bonilla.

Igor Dominguez–Perez, El Monte Mall San Juan, PR, for Doral Mortgage Corp.

### *OPINION AND ORDER*

DOMINGUEZ, District Judge.

This case was filed by PRAMCO, LLC ("PRAMCO") on behalf of CFSC Consortium, LLC, against Angel Ferreras–Goitia's, et als.,("Defendants"), for foreclosure of a mortgage and collection of money. The complaint was filed pursuant to this Court's diversity jurisdiction, 28 U.S.C. § 1332. (Docket No. 1). Pending before the Court is Defendants' motion for summary judgment. (Docket No. 47). However, because the Court understands that it now lacks diversity jurisdiction, this case is **DISMISSED WITHOUT PREJUDICE.**

### I

### PROCEDURAL AND FACTUAL BACKGROUND

On April 25, 1991, Defendants received a loan from the Small Business Administra-

tion, in the amount of $150,000, payable to the Small Business Administration, with interest thereon at the rate of nine and a half per cent (9.5%) per annum, to be paid in 178 installments of $1,575.00. In order to secure full payment, on May 15, 1991, Defendants executed a mortgage deed upon three (3) properties they owned.

The Court notes from the outset that a previous action was filed in 1994, Civil No. 94–1469(RLA),[1] which resulted in the execution of **one** of those three (3) properties. Accordingly, the instant complaint makes reference to only two (2) properties, albeit only one of those fits the description of a property used as collateral in the mortgage deed. The Court explains briefly.

According to the copy of said deed, attached to the instant complaint,[2] the properties were divided into A, B and C. The mortgage deed states that "Property A" secured $85,000, and is found recorded as property number 16,676, recorded in page 230, Volume 25, in the Property Registry, Trujillo Alto Part, San Juan, Section IV. "Property B" secured $15,000, and is found recorded as property number 3,886, recorded in page 59, Volume 86, in the Property Registry, Trujillo Alto Part, San Juan, Section IV. And "Property C" secured $50,000, and is found recorded as property number 2,101, recorded in page 90, Volume 64, in the Property Registry, Trujillo Alto Part, San Juan, Section V. As will be discussed, *infra*, the property subject to foreclosure in Civil Case No. 94–1469(RLA), was that fitting the description of "Property A."

As stated before, only two (2) properties remain in Defendants' legal possession. The Court notes, however, that, although PRAMCO's complaint supposedly makes reference to "Property A" and "Property B," the only property which, according to the mortgage deed, fits proper description is "Property B." The other property, titled "A" in the complaint, is allegedly found recorded in page 127, Volume 137, in the "Property Registry, Trujillo Alto Part." But the mortgage deed does **not** contain a property that fits that description.[3] Thus, by description and deduction, the only property subject of this original complaint is "Property B." Simply explained, the complaint does not properly address "Property A."[4]

Nevertheless, due to Defendants default, this action was filed against them, on Jan-

---

1. *The Farm Credit Bank of Baltimore v. Jose Fernando Avila–Virella, Elsie Negron Luciano, Angel Ferrera–Goitia, et als.*, No. 94–1469(RLA). Apparently, neither CFSC Consortium, LLC nor PRAMCO were holders of the deed, but **The Farm Credit of Baltimore** ("Farm Credit"), which decided to execute only part of the collateral. The note, which is attached to the complaint, specifically provides that upon the nonpayment, the "Holder is empowered to sell, assign, and deliver the whole **or any part** of the Collateral at public or private sale...." (Emphasis added.) The Note also states that the "Holder is further empowered to collect ... or cause ... to be converted into money all **or any part of** the Collateral, by suit or otherwise, **and** to surrender, compromise, release, renew, extend, exchange, or substitute any item of the Collater-

al in transactions with the undersigned **or any third party**...." (Emphasis added.)

2. Notwithstanding Local Rule 108.1, the documents attached to the complaint were filed in Spanish. The Court forewarns as to the doctrine established by the First Circuit in *Ramos–Baez v. Bossolo–Lopez*, 240 F.3d 92 (1st Cir.2001) requiring English translation of all documents for appeal purposes. Circuit Court of Appeals, Local Rule 30.7. Further, untranslated documents shall not be considered on appeal even if outcome determinative in nature. *Ramos–Baez*, 240 F.3d at 94.

3. Apparently, by error, PRAMCO failed to adequately describe the second property in its complaint.

4. Nor does it address "Property C."

uary 27, 2000. The complaint was filed pursuant to this Court's **diversity jurisdiction,** 28 U.S.C. § 1332. (Docket No. 1)(the Court will refer to this action *infra* as "the original complaint"). The complaint states that Defendants "are the owners of the mortgaged properties according to the Registry of the Property and plaintiff's best knowledge and belief." (Docket No. 1, p. 5).

On July 12, 2000, Defendants answered the complaint. (Docket No. 9). In their answer, Defendants mostly denied the allegations against them. However, they "accepted" that, although they "should be" the registry owners of "all" the properties, they are not. They advised the Court that "one of the properties"—hereinafter, "Property A"—was sold in public sale **by Farm Credit** to a man named Felipe Lebron ("Mr.Lebron"), on October 13, 1999. This, after partly executing the mortgage deed, **in another foreclosure case,** namely, Civil No. 94–1469(RLA).[5] As such, Defendants had intentions of regaining title over said property, by filing a Third-party complaint against third-party defendants, Farm Credit, Mr. Lebron and Doral Mortgage Bank ("Doral"). Defendants further announced intentions of impeaching the public sale of **"Property A"** through the third-party complaint, for alleged deficiencies in the required notification prior to its public sale by Farm Credit. In other words, Defendants were to claim lack of required notice of said public sale, and/or that it was deficiently performed, and, as such, said sale must be annulled by the Court.[6]

■ Indeed, on July 12, 2000, Defendants filed a Third-party complaint impleading three (3) additional parties, pursuant to Fed.R.Civ.P. 14. (Docket No. 9). As stated above, the named third-party defendants are Farm Credit, Doral and Mr. Lebron. As third-party defendants, it is important to note that Doral and Mr. Lebron are residents of Puerto Rico. The other third-party defendant, The Farm Credit of Baltimore, may be (but not necessarily) considered a resident of Puerto Rico.[7]

---

5. Default Judgment against the Defendants was entered in that case, and it was closed on December 19, 1995. (See Docket No. 18, Civil No. 94–1469(RLA)). Writ of execution was issued and execution was finally obtained in late 1999. Again, PRAMCO was not a party to that case because they were not holders of the deed. Farm Credit, the Holder, partially foreclosed the deed.

6. This, notwithstanding the fact that terms of the loan agreement Note signed by them, which is attached to the Complaint, specifically provides that the Holder is empowered to sell the whole or any part of the Collateral at public or private sale, "**without** demand, advertisement or **notice of the time or place of sale** or of any adjournment thereof, **which are hereby expressly waived.**"

7. Farm credit banks are Federally chartered instrumentalities of the United States. Each farm credit bank is a "body corporate" and has the power to both sue and be sued. *See*

12 U.S.C. § 2013(4). The Farm Credit System includes the Farm Credit Banks, the Federal Land Banks Associations, the Production Credit Associations, the Banks for Cooperatives, and such other institutions as may be made a part of this system, all of which are chartered by and subject to regulation by the Farm Credit Administration. *Id.*, §§ 2002(a). The Farm Credit System is divided into Farm Credit Districts, designated by numbers. *Id.*, §§ 2002(b) (*E.g.*, the States of Illinois and Missouri are in the "seventh district" of the Farm Credit System).

Although the Federal Land Banks are federally chartered corporations, however, they are never considered "foreign corporations but have a legal existence in every State in which they may transact business pursuant to the authority conferred on them by Congress." *Farm Credit Bank of St. Louis v. Schwarm,* 251 Ill.App.3d 205, 210, 190 Ill.Dec. 687, 622 N.E.2d 97 (1993)(*citing, Farm Credit Bank v. Rub,* 481 N.W.2d 451, 457 (N.D.1992)); *see also Federal Land Bank v. Felt,* 368 N.W.2d

As a second cause of action, the third-party complaint filed by Defendants claims that Mr. Lebron, the buyer of "Property A," had caused damage to the neighboring properties, which Defendants still owned. They alleged that, once in possession of "Property A," Mr. Lebron had begun the construction of his new house, after obtaining a $130,000 mortgage loan from Doral. As part of the construction on his newly acquired property, Mr. Lebron brought heavy machinery on to "Property A." The machinery entered Mr. Lebron's property through a small road that allegedly crossed through the neighboring property that Defendants they still owned and possessed. As a result, Defendants allege that the machinery caused severe damage to their property, and that Mr. Lebron is liable to them under Puerto Rico's general tort statute, article 1802 of the Civil Code, 31 P.R. STAT. ANN., § 5141.

The Defendants' immediately advised Mr. Lebron that the road used to access his property was not part of "Property A," but instead constituted part of their land. Therefore, they prohibited him from accessing "Property A" through "their property," that is, through "their road." Mr. Lebron, however, advised them that he had acquired "Property A" through a public sale in 1999, and that he was certain it included the road. Mr. Lebron further advised Defendants that they could not foreclose access to his property in that manner. Defendants responded by informing Mr. Lebron that they planned to impeach the public sale of "Property A,"

and that the same would eventually be declared void. Thus, Defendants' second cause of action against Mr. Lebron.

On September 18, 2000, Farm Credit answered the Third-party Complaint. (Docket No. 17). Soon thereafter, on October 30, 2000, Mr. Lebron also answered the Third-party Complaint, and among other averments, stated a Cross Claim against Farm Credit. (Docket No. 22).

In the Cross Claim, Mr. Lebron alleges that he is a third-party, good-faith purchaser from Farm Credit, and as such, is protected by Puerto Rico's mortgage law. He further claims that Farm Credit wrongly led them to believe in 1999 that he had acquired an "unencumbered parcel." He claims that he bought the property believing that he was also acquiring the road providing access. He claims to have suffered damages, obtaining a mortgage loan to build his new house, and executing a series of other costly agreements without having access to the main property. Doral, who also entered this action also as a third-party defendant, answered the complaint on April 19, 2001. (Docket No. 28).

On April 30, 2001, PRAMCO filed a motion advising this Court that Defendants had filed a petition for bankruptcy. (Docket No. 34). PRAMCO thus raised the question of whether this action had been automatically stayed, pursuant to 11 U.S.C. § 362(a). Nevertheless, on August 7, 2001, Defendants filed a motion "waiving" the protective stay in the bankruptcy proceedings. (Docket No. 42). Said waiver was founded upon a stipulation entered

---

592, 595 (S.D.1985)(same)(collecting cases); *Federal Land Bank v. Gefroh*, 390 N.W.2d 46, 47 (N.D.1986)(same). In other words, they are to be considered corporations of the state in which they conduct ordinary business.

Henceforth, because the third-party defendant named by Defendants—Farm Credit—is from Baltimore, it may be considered a resident of Baltimore, Maryland. But because

case law establishes that the controlling factor for these purposes is "the State in which [it] may transact business," *Farm Credit Bank of St. Louis*, 251 Ill.App.3d at 210, 190 Ill.Dec. 687, 622 N.E.2d 97, it **may** also be considered a resident of Puerto Rico. Nonetheless, for the purposes herein being adjudicated, it is **unnecessary** to reach a specific determination as to Farm Credit's actual resident status.

between PRAMCO and Defendants, whereby **Defendants consented to the entry of judgment against them and in favor of PRAMCO, for the amount requested in the original complaint.** In addition, Defendants agreed that, **if the amount was not satisfied within 60 days, PRAMCO would be free to execute the judgment against the property.** (Docket No. 44).[8] Accordingly, **Judgment was entered** for PRAMCO **in the original complaint,** on September 26, 2001 (Docket No. 48). **PRAMCO was soon thereafter dismissed, and with it, so was the original complaint.** (Docket No. 50).

On September 25, 2001, Defendants filed this motion for summary judgment, against Farm Credit. (Docket No. 47). Farm Credit has opposed. (Docket No. 52). The Court, however, finds it is unnecessary to reach the merits of Defendants' motion, in light of the fact that this Court's diversity jurisdiction vanished when the Court dismissed the original suit in the instant case.

## II

### SUPPLEMENTAL JURISDICTION AND § 1367

■ It is a fundamental precept that federal courts are courts of limited jurisdiction. The limits upon federal jurisdiction, whether imposed by the Constitution or by Congress, must be neither disregarded nor evaded. *See Bonas v. Town of North Smithfield,* 265 F.3d 69, 73 (1st Cir.2001)("Federal courts are courts of

limited jurisdiction, and therefore must be certain that they have explicit authority to decide a case").

■ Furthermore, where suit is originally filed in federal court, pursuant to its diversity jurisdiction statute, 28 U.S.C. § 1332, the longstanding rule is that there must be "complete diversity." This rule was laid down in *Strawbridge v. Curtiss,* 7 U.S (3 Cranch) 267, 2 L.Ed. 435 (1806), and consistently followed since. Moreover, it is well-known that, for purposes of diversity jurisdiction, citizenship usually is equated with domicile. *Valentin v. Hospital Bella Vista,* 254 F.3d 358, 366 (1st Cir.2001); *see also Rodriguez–Diaz v. Sierra–Martinez,* 853 F.2d 1027, 1029 (1st Cir.1988).

■ When non-diverse third parties are impleaded pursuant to FED.R.CIV.P.14, a question of pendent or ancillary jurisdiction arises. Ancillary jurisdiction is the authority of a federal court "to hear claims that otherwise would not be within federal jurisdiction because the claims arise from the same set of facts as a case properly before the federal court." ERWIN CHEMERINSKY, FEDERAL JURISDICTION § 5.4, p. 312 (2d ed.1994). The seminal case setting forth this doctrine is *Freeman v. Howe,* 65 U.S. (24 How.) 450, 16 L.Ed. 749 (1860). There the Supreme Court held that third parties may intervene in an original federal suit, and present their claims, notwithstanding that their claim was "not an original suit, but ancillary and dependent...." *Id.,* at 460. Later, in *Stewart v. Dunham,* the Supreme Court explained that non-

---

**8.** See the stipulation for entry of judgment in the original complaint, where PRAMCO and Defendants stipulated that, "at the present time there is only one remaining real property in the possession of defendants that secures the obligation giving rise to this action." That property, according to the stipulation, is property number 3,886, "located in Barrio Carraizo, Trujillo Alto, Puerto Rico, as more

fully described as Property B" of the mortgage deed, "secured by a First Mortgage which amount once satisfied by defendant will be deducted from the total amount owed of the judgment...." *See* Docket No. 44, Stipulation for Entry of Judgment, p. 2., item no. 4. **Nothing** was stipulated or stated **regarding** "Property A" nor "Property C."

diverse third parties could intervene in an original, bona fide, diversity suit, even though their presence meant the elimination of complete diversity. The Supreme Court explained that said action was possible because, under those circumstances, the non-diverse parties' intervention "did not oust the jurisdiction of the court, already lawfully acquired, as between the original parties." 115 U.S. 61, 64, 5 S.Ct. 1163, 29 L.Ed. 329 (1885).

In later cases, such as the case of *Moore v. New York Cotton Exchange*, 270 U.S. 593, 46 S.Ct. 367, 70 L.Ed. 750 (1926), the Supreme Court held that a defendant's counterclaim did not eliminate jurisdiction because it arose from a common nucleus of operative facts as the plaintiff's claims, although there was no independent basis for federal jurisdiction. Simply expressed, federal jurisdiction was possible because the counterclaim arose from the same facts as plaintiff's claims.

In *United Mine Workers v. Gibbs*, 383 U.S. 715, 726, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966), the Court reiterated that pendent jurisdiction is possible when there is a federal claim properly before a federal court and a state claim arises from a common nucleus of operative fact. Furthermore, the Court explained that this doctrine is "of discretion," not of a party's right. The Court stated that the doctrine's justification "lies in considerations of judicial economy, convenience, and fairness to litigants; if these are not present a federal court should hesitate" to apply the doctrine. *Id.* Thus, the application of the doctrine of ancillary jurisdiction is, in essence, subject to the discretion of the Court.[9]

In the landmark case of *Owen Equipment & Erection Co. v. Kroger*, 437 U.S. 365, 98 S.Ct. 2396, 57 L.Ed.2d 274 (1978),

the Supreme Court reversed the lower courts on the basis that the principal, remaining, nondiverse claim asserted was **not** an ancillary and dependent claim, but a **new and independent one.** The plaintiff's claim against the third party defendant had been **entirely separate** from the plaintiff's original claim against the defendant, and the third party's liability to the plaintiff **did not depend on the defendant's being liable to the plaintiff.**

The facts in *Kroger* were as follows. James Kroger's widow, a citizen of Iowa, filed a wrongful-death action against a power company in Nebraska, after her husband was electrocuted when the boom of a steel crane next to him came too close to a high-tension electric power line. She claimed that the power company was negligent in operating the power line. The complaint, filed in Nebraska federal district court, was **solely based on diversity jurisdiction.** The power company, in turn, filed a third-party complaint against Owen Equipment and Erection Company (Owen), which owned and operated the crane, pursuant to FED.R.CIV.P. 14. The third-party complaint alleged that Owen's negligence was the proximate cause of Mr. Kroger's death, and as such, was directly liable to Mrs. Kroger. The widow was thereafter granted leave to amend her complaint by naming Owen—which she claimed to be a Nebraska corporation with its principal place of business in Nebraska—as an additional defendant.

Soon thereafter, **the Court granted summary judgment, and dismissed the original defendant,** *i.e.,* **the power company.** Owen was left to be the sole defendant. However, although the complaint alleged that Owen was a corporation organized and existing under the laws of Ne-

---

**9.** "The crux of the matter ... [is] that Gibbs involved federal question jurisdiction." *An-* *cillary Jurisdiction,* 92 HARV. L. REV. 241, 248 (1978).

braska, **during trial** it was disclosed that petitioner's principal place of business was in Iowa. Thus, since plaintiffs were also from Iowa, Owen moved to dismiss on the basis of lack of federal diversity jurisdiction. **After the jury returned a verdict for Mrs. Kroger,** the district court denied Owen's motion to dismiss. The Court of Appeals affirmed, holding that the district court acted properly and retained jurisdiction because, pursuant to *Gibbs,* the important factor was that Mrs. Kroger's claim against Owen (a non-diverse party) arose from the "core of 'operative facts' giving rise to" her original claim against the electric company (a diverse party), notwithstanding the dismissal of the original claim against the diverse party. The Supreme Court reversed for lack of jurisdiction.

The Supreme Court first recognized that the test established in *Gibbs* does not end the inquiry as to whether federal courts may entertain cases between non-diverse parties that remain after the original, diversity suit is dismissed. The Court in *Kroger* noted that courts must take an additional step. *See Kroger,* 437 U.S. at 372, 98 S.Ct. 2396 (the *Gibbs* test "is merely the first hurdle"). To wit, the Court held that a party asserting diversity jurisdiction must overcome two hurdles: one constitutional (the *Gibbs* test) and the other statutory (the *Kroger* test).

■ Accordingly, a court must first examine under *Gibbs,* whether the federal claims and nonfederal claims arise from a "common nucleus of operative fact." That is, whether they comprise but "one constitutional case." *See Gibbs,* 383 U.S. at 725, 86 S.Ct. 1130. As a second step, it is "necessary to examine the relevant statute, 28 U.S.C. § 1332(a)(1), and the context in which plaintiff's claim was asserted to ascertain whether Congress had 'expressly or by implication negated' the exercise of jurisdiction." 92 Harv. L.Rev. at 243(*cit-*

*ing Kroger,* 437 U.S. at 373, 98 S.Ct. 2396)(footnotes omitted). This second step, which requires an examination of the statutory grant of jurisdiction by Congress, comprises a two-part "context" test. The *Kroger* Court emphasized that when inquiring into the specific Congressional statute that confers jurisdiction, context is of upmost importance. The Court stated, "in determining whether jurisdiction over a nonfederal claim exists, **the context in which the nonfederal claim is asserted is crucial.**" *Kroger,* 437 U.S. at 375–76, 98 S.Ct. 2396 (emphasis added).

■ The second part of the *Kroger* test—the "context" test—establishes essentially a twofold analysis, which must be followed by trial courts. To wit, courts must first examine whether there is a possibility for evasion of jurisdictional requirements established in the jurisdictional statute. In other words, whether the remaining, interested party is merely seeking the advantages of incidental jurisdiction, that is, whether it has "chosen the federal rather than the state forum …" merely for the purpose of seeking convenience and efficiency. *Kroger,* 437 U.S. at 376–77, 98 S.Ct. 2396. Simply put, the court must consider whether any other considerations—**aside from convenience and efficiency**—precludes the remaining, interested party from having its claims adjudicated in local courts. If not, then this factor clearly would weigh against retaining jurisdiction, because "neither the convenience of litigants nor considerations of judicial economy can suffice to justify extension of the doctrine or ancillary jurisdiction to a [party's] cause of action against a citizen of the same State in a diversity case." *Id.*

■ The second element of *Kroger*'s "context" test requires an analysis of whether there is any "logical dependence" between the original complaint and the

ancillary, non-federal claims, or "mere factual similarity." Here, it is important to note that "logical dependence exists where liability under the nonfederal claim depends to some extent upon a successful prosecution of the jurisdiction-granting claim." 92 HARV. L.REV. at 246 (footnotes omitted).

In 1990, Congress finally decided to codify the doctrine of ancillary jurisdiction of *Gibbs* and *Kroger*. "The Judicial Improvements Act of 1990 provided the first statutory authority for ancillary and pendent jurisdiction, created the new concept of 'supplemental jurisdiction,' which encompasses both ancillary and pendent jurisdiction...." CHEMERINSKY, FEDERAL JURISDICTION § 5.4, p. 317 The Supplemental Jurisdiction statute enacted by Congress provides:

(a) Except as provided in subsections (b) and (c) or as expressly provided otherwise by Federal statute, in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution. Such supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties.

(b) In any civil action of which the district courts have original jurisdiction founded solely on section 1332 of this title, the district courts shall not have supplemental jurisdiction under subsection (a) over claims by plaintiffs against persons made parties under Rule 14, 19, 20, or 24 of the Federal Rules of Civil Procedure, over claims by persons proposed to be joined as plaintiffs under Rule' 19 of such rules, or seeking to intervene as plaintiffs under Rul 24 of

such rules, when exercising supplemental jurisdiction over such claims would be inconsistent with the jurisdictional requirements of section 1332.

(c) The district courts **may decline to exercise supplemental jurisdiction** over a claim under subsection (a) if—

(1) the claim raises a novel or complex issue of State law,

(2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,

(3) **the district court has dismissed all claims over which it has original jurisdiction,** or

(4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

(d) The period of limitations for any claim asserted under subsection (a), and for any other claim in the same action that is voluntarily dismissed at the same time as or after the dismissal of the claim under subsection (a), shall be tolled while the claim is pending and for a period of 30 days after it is dismissed unless State law provides for a longer tolling period.

(e) As used in this section, the term "State" includes the District of Columbia, the Commonwealth of Puerto Rico, and any territory or possession of the United States.

*See* 28 U.S.C. § 1367 (emphasis added).

The Court finds that the third exception in § 1367(c) is applicable to the case at bar. Clearly, under the third exception, a district court **may** decline to exercise jurisdiction when it "has dismissed all claims over which it ha[d] original jurisdiction." The rationale under this exception is simple. "The idea ... is that once the crutch is removed—the claim that supports the supplemental jurisdiction of the other

claim or claims—the other should not remain for adjudication." Elizabeth Delagardelle, *Defining the Parameters of Supplemental Jurisdiction After 28 U.S.C. §§ 1367*, 43 Drake L.Rev. 391, 406 (1994)(*citing* David D. Siegel, *Practice Commentary §§ 1367*, 829–31 (West 1993)); *see also* David D. Siegel, *Changes in Federal Jurisdiction and Practice Under the New (Dec. 1, 1990) Judicial Improvements Act*, 133 F.R.D. 61, 63.

■ Under 28 U.S.C. § 1367(c), if the original supplemental jurisdiction claim is dismissed for lack of subject matter jurisdiction, the Court is divested of all power to adjudicate any supplemental claim appended to it, and all supplemental claims may be dismissed without prejudice. *See Molett v. Penrod Drilling Co.*, 919 F.2d 1000, 1004 (5th Cir.1990); *Envirotech Corp. v. Bethlehem Steel Corp.*, 729 F.2d 70, 73 (2d Cir.1984); *Fairview Park Excavating Co. v. Al Monzo Constr. Co.*, 560 F.2d 1122, 1125 (3d Cir.1977). The statute clearly effects no change in this view as § 1367(a)'s general grant of supplemental jurisdiction authority is explicitly premised on the existence of jurisdiction-conferring claim within the original jurisdiction of the federal courts. *See Rhyne v. Henderson County*, 973 F.2d 386 (5th Cir.1992)(dismissing state claims in a § 1983 case under § 1367(c)(3) after the federal question claims had been dismissed); *Freiburger v. Emery Air Charter, Inc.*, 795 F.Supp. 253 (N.D.Ill.1992)(dismissing claims under § 1367(c)(3) because the claims of retaliatory discharge and discharge for participation in an union did not arise from a common nucleus of facts); *Lahaza v. Azeff*, 790 F.Supp. 88 (E.D.Pa.1992)(declining to apply supplemental jurisdiction under § 1367(c)(3) to state law claims where it had dismissed the federal question claims); *Manela v. Gottlieb*, 784 F.Supp. 84 (S.D.N.Y.1992)(declining to exercise sup-

plemental jurisdiction under § 1367(c)(3) over state law claims after it dismissed the federal claim alleging violations of securities laws); *Ruckle v. Roto Am. Corp.*, 339 F.2d 24, 27 (2d Cir.1964)(stating that "pendent jurisdiction over a claim under stat law requiring a plenary trial on the merits should not be exerted when the federal claim is dismissed prior to trial").

However, "judicial Discretion is a particularly important element" here, and the "may" in "may decline" phrase "has a major role to play." Siegel, *Practice Commentary §§ 1367*, at 835. The Court finds that its discretion in this case, however, shall be guided by the factors outlined in *Kroger*. And after exercising its discretion under § 1367(c)(3) and *Kroger*, the Court finds that the particular facts of this case point to the conclusion that dismissal here is extremely appropriate.

## III

### APPLICATION

■ The Court must first examine under *Gibbs*, whether the diversity claim filed by PRAMCO against the Defendants, and the non-diverse claims filed by Defendants against the three third-party defendants (Farm Credit, Doral and Mr. Lebron) arise from a "common nucleus of operative fact." That is, whether they comprise but "one constitutional case." *See Gibbs*, 383 U.S. at 725, 86 S.Ct. 1130.

As stated above, the original complaint filed by PRAMCO in 2000 against Defendants, pursuant to this Court's diversity jurisdiction, is for foreclosure of a mortgage deed signed by Defendants in 1991. The mortgage deed was executed upon three (3) properties Defendants owned and possessed. PRAMCO, the present holder of Defendants' liability note, is seeking to execute **the only** remaining real property in the possession of Defendants—**"Proper-**

ty B"—which secures the obligation giving rise to PRAMCO's action. On the other hand, **based on the same liability,** the ancillary, non-diverse, action later filed by Defendants against the three third-party defendants seeks to impeach the foreclosure and execution of another of the three properties—"**Property A**"—which was previously executed, in a separate action filed in 1993. Unquestionably, because the issues raised in both the original and ancillary claim have a related **origin—they are based on the same liability**—thus both actions arise from a "common nucleus of operative fact." Therefore, the *Gibbs* test is easily met here. However, the Court quickly underscores that the *Gibbs* test "is merely **the first hurdle** that must be overcome in determining that a federal court has jurisdiction over a particular controversy." *See Kroger,* 437 U.S. at 372, 98 S.Ct. 2396 (emphasis added). It is the first, but not the only, required element.

 The second step requires application of the *Kroger* test. Here it is necessary to examine the relevant statute, namely, 28 U.S.C. § 1332(a)(1). As in *Kroger,* this Court is also mindful that this statute's history "clearly demonstrates a congressional mandate that diversity jurisdiction is not to be available when any plaintiff is a citizen of the same State as any defendant." *Kroger,* 437 U.S. at 374, 98 S.Ct. 2396. The Court is further aware that Angel Ferreras–Goitia's, and others— that is, the Defendants—could not originally have brought suit in this federal court as original plaintiffs, naming Farm Credit, Doral and Mr. Lebron as defendants, because citizens of Puerto Rico would have been on both sides of the litigation. That would preclude complete diversity. Nevertheless, an identical lawsuit resulted when PRAMCO stipulated a settlement with Defendants, and the original controversy, which provided diversity jur-

isdiction, ended. "Complete diversity was destroyed just as surely as if [the Defendants] had sued [Farm Credit, Doral and Mr. Lebron] initially." *Id.* Thus, the Court finds that this factor clearly weighs **against** retaining supplemental jurisdiction in this case.

However, the Court must examine the specific context in which Defendants' claim was asserted, pursuant to *Kroger*'s three-part "context" test. Accordingly, the Court first examines whether retaining jurisdiction over Defendants' third-party complaint raises the possibility for evasion of jurisdictional requirements established in the jurisdictional statute, that is, the requirements established in 28 U.S.C. § 1332. The answer is obvious.

It is true, as the Court stated in *Kroger,* that third-party complaints **generally** depend—to some extent—upon the resolution of the primary or original lawsuit. 437 U.S. at 376, 98 S.Ct. 2396. Thus, the crucial inquiry is not whether there is a mere casual, factual similarity between the original complaint and the ancillary one, but whether there is solid, "logical dependence" between them. The Court shall find that logical dependence exists "where liability under the nonfederal claim depends to some extent upon a successful prosecution of the jurisdiction-granting claim." 92 HARV. L. REV. at 246 (footnotes omitted).

The Court finds there is no "logical dependence" here. While both actions arise from the same nucleus of fact, as discussed above, it is clear that **the Defendants' non-diverse action does not logically depend—in any manner or extent—upon the successful prosecution of PRAMCO's original complaint.** Indeed, the stipulation of settlement between PRAMCO and Defendants, which ended the original claim, is the best evidence to support the Court's determination. Otherwise, the

Defendants would have been reluctant to enter into stipulation with PRAMCO, and would have further objected to PRAMCO's dismissal as a party in this controversy. Following their stipulation, this Court's entered judgment against Defendants in the initial case, and when PRAMCO moved to be dismissed from this controversy soon thereafter, the Court readily granted its request without objection. (Docket No. 50).

But more importantly, Defendants' ancillary, non-diverse, third-party complaint merely raises an issue of "factual similarity," but nothing more. The Defendants seek to impeach the public sale of "**Property A**," which was executed following foreclosure **in a separate, different and independent case,** which was filed before this district court in 1993, namely, Civil No. 94–1469(RLA).[10] On the other hand, the judgment entered against Defendants' and in PRAMCO's favor in the original complaint herein authorizes execution of the mortgage deed against "**Property B**," which is the only remaining real property in Defendants' possession. The only relation to these actions is the decade-old mortgage deed which gave rise to Defendants' liability. And as the action begun in 1993 against Defendants and "**Property A**," which was not logically dependent to any other action, such as PRAMCO's action against Defendants and "**Property B**," likewise neither is Defendants' action impeaching the public sale of "Property A" logically dependent on PRAMCO's original complaint. Again, as the *Kroger* Court

noted, non-diverse, third-party complaints **as a general rule** may be related, to some extent, to an original lawsuit, but this Court stresses that no such dependency is found here. In the context of PRAMCO's original case, Defendants' ancillary, non-diverse, third-party complaint merely raises an issue of "factual similarity," but nothing more. Expressed differently, they are "entirely separate" issues. *See Kroger,* 437 U.S. at 376, 98 S.Ct. 2396; *see also* WRIGHT & MILLER, 6 FEDERAL PRACTICE AND PROCEDURE § 1442, p. 295 (West 1990)("impleader is available only against persons who are or may be liable to defendant for part or all of plaintiff's claim; **it cannot be used as a way of combining all controversies having a common relationship in one action**")(emphasis added).

■ Finally, pursuant to *Kroger,* the Court must ascertain whether retaining Defendants' non-diverse claim would possibly evade the jurisdictional requirements and policy established by Congress when enacting 28 U.S.C. § 1332. In other words, the Court must consider whether any other considerations—**aside from convenience and efficiency**—precludes the remaining, interested party—the Defendants'—from having their claims adjudicated in local courts. *Kroger,* 437 U.S. at 376–77, 98 S.Ct. 2396. The Court finds that Congress has established a clear rule that diversity jurisdiction may be possible "only when there is complete diversity of citizenship." *Id.,* at 377, 98 S.Ct. 2396. This rule has been consistently reiterated

---

**10.** It would appear that Defendants' are, in fact, trying to reopen that case, which ended and was long-ago closed. The Court harbors serious doubt whether Defendants' action is appropriate—or altogether possible—via a third-party complaint, pursuant to FED. R.CIV.P. 14. Because the public sale being impeached by Defendants was held in **another case,** the Court would suggest that the mechanism called for in that situation, may be possi-

ble, albeit unlikely, under FED.R.CIV.P. 60. But if Defendants chose to explore that possibility, they would have to nonetheless establish an independent ground for jurisdiction of the Court. And the Court stresses that diversity jurisdiction is precluded from the outset, under 28 U.S.C. § 1332, if they file suit in this Court against non-diverse parties such as Doral and Mr. Lebron.

and applied. As the First Circuit Court recently expressed, "[f]ederal courts are courts of limited jurisdiction, and therefore must be certain that they have explicit authority to decide a case." *Bonas*, 265 F.3d at 73. Therefore, pursuant to the particular facts of this case, the Court finds that by retaining Defendants' supplemental case, even after the original complaint has ended, would indeed evade the jurisdictional requirements established by Congress through § 1332.

Furthermore, the Court cannot conclude that the Defendants' convenience and efficiency would be served in this case by retaining jurisdiction. This case is at its initial stage. First of all, PRAMCO's original complaint against them was filed in January 2000. Defendants' answer to PRAMCO's original complaint, together with their third-party complaint, however, were not filed until **six months later**, in July 2000. Subsequently, several-cross claims where filed among the parties of the third-party controversy (of course, none against PRAMCO), the last of which was filed recently. To wit, Farm Credit filed its answer to the cross claim filed by Mr. Lebron as recently as September 26, 2001. (Docket No. 49). Moreover, it is important to underscore that no significant discovery—**if any**—has been conducted in the third-party case filed by Defendants, and, thus, the costs and expenses incurred by the parties has been minimal to this date.[11] Clearly, this case is not sufficiently mature for the Court to retain jurisdiction.[12]

Thus, the Court is unable to discern here any possible interest in efficiency or convenience which might be served, which could possibly trump over Congress' clear mandate requiring complete diversity, under § 1332. And even it the Court were to assume, *arguendo*, that retaining jurisdiction would be cost-efficient and convenient, that would still not pass muster because "neither the convenience of litigants nor considerations of judicial economy can suffice to justify extension of the doctrine or ancillary jurisdiction to a [party's] cause of action against a citizen of the same State in a diversity case." *Kroger*, 437 U.S. at 377, 98 S.Ct. 2396.

Therefore, the Court finds that retaining Defendants' non-diverse complaint would indeed evade the jurisdictional requirements and policy established by Congress when enacting 28 U.S.C. § 1332. The Court further finds that there are no other considerations—**not even convenience and efficiency**—which precludes the Defendants' from having their claims adjudicated in local courts. The Court stresses that the Defendants' third-party case is plagued with complex issues of local mortgage law, which is precisely one of the reasons provided by law for the Court to discretionarily decline exercise of supplemental jurisdiction. *See* 28 U.S.C. § 1367(c)(1). Therefore, "[e]ven if diversity jurisdiction is retained, however, it is not clear that federal adjudication is preferable. State courts are best able to decide questions of state law. State courts are best able to decide questions of law.

---

11. The Court stresses that the stage in which Defendants' third-party case stands, contrasts tremendously and fares much better with that of the parties in *Kroger*. In *Kroger*, the case **had already gone to trial**, and a jury had delivered a verdict favorable to the remaining party with interest, Mr. Kroger. Notwithstanding the advanced stage of that case, and the costs that parties had incurred, the Supreme Court found that the ancillary controversy had to be dismissed nonetheless for lack of diversity jurisdiction.

12. Compare *Rodriguez v. Doral Mort. Corp.*, 57 F.3d 1168, 1177 (1st Cir.1995)(the supplemental claims should not be jettisoned at trial when the federal cause of action is dismissed, that is, "a court need not always throw out the bath water with the baby").

And once a state law claim is in federal court the state courts are powerless to rectify an error in the interpretation of state law." 92 HARV. L.REV. at 251 (footnote omitted).

Therefore, it is undisputed that there is no diversity between Defendants and the third-party defendants in this case. PRAMCO's complaint under 28 U.S.C. § 1332 against Defendants' has ended, and PRAMCO has been dismissed. The Court has further failed to detect any independent basis of federal jurisdiction over Defendants' action, such as federal question jurisdiction under 28 U.S.C. § 1331. The Court is mindful that each case is to be evaluated on its own facts; and each case is unique. But here, the evaluation of all the *Kroger* factors points to inevitable dismissal of the remaining aspects of the case without prejudice.

To wit, the remaining ancillary action here is between the Defendants, who are residents of Puerto Rico, against Farm Credit, Doral and Mr. Lopez, two of which are clearly residents of Puerto Rico. Congress' supplemental jurisdiction provides that a district court may decline to exercise jurisdiction when it "has dismissed all claims over which it ha[d] original jurisdiction." 28 U.S.C. § 1367(c)(3). Thus, "once the crutch is removed—the claim that supports the supplemental jurisdiction of the other claim or claims—the other should not remain for adjudication." Siegel, *Practice Commentary §§ 1367*, at 31. As the case now stands, there can be no question whatsoever that the court lacks diversity jurisdiction over the subject matter. There is no federal question of any kind, and jurisdiction must rest, if it exists

at all, on diversity grounds only. However, it does not.

Furthermore, the only major difference between the facts in *Kroger* and the case at bar is that in that case the original claim was dismissed as to the original "defendant" (the electric company), and here the initial claim was dismissed as to the original "plaintiff" (PRAMCO). But whether the original "plaintiff" or "defendant" is dismissed is irrelevant in light of *Kroger*'s holding. To wit, *Kroger* clearly mandates that when the initial action which provided federal jurisdiction in the first place is dismissed and a non-diverse suit remains, dismissal is appropriate if, considering the specific context of the case, Congress through 28 U.S.C. § 1332 "has expressly or by implication negated" the exercise of jurisdiction over the particular nonfederal claim. *See Kroger*, 437 U.S. at 373, 98 S.Ct. 2396.

After examining the specific context in which the instant case arises, the Court finds that this case should be dismissed without prejudice for lack of jurisdiction. The Court is convinced that the policy established by Congress in § 1332 clearly mandates this determination. *Id.*, at 377, 98 S.Ct. 2396.[13]

## IV

## CONCLUSION

The only basis for subject-matter jurisdiction in the case at bar was the original complaint filed by PRAMCO against Defendants, under the diversity of citizenship. 28 U.S.C. § 1332. But that case having just been fully settled as between those original litigants, no independent basis for

---

**13.** In short, *Kroger* "created an unprincipled, but well-defined and narrow, gap in the confluence between procedural and jurisdictional tests." Richard D. Freer, *Compounding Con-* *fusion and Hampering Diversity: Life After Finley and the Supplemental Jurisdiction Statute*, 40 Emory L.J. 445, 464 (1991).

federal jurisdiction remains as to the supplemental jurisdiction.

It is of course true that the original assertion of an ancillary claim—in this instance Defendant's third-party complaint against the three third-party defendants—did not destroy this Court's original diversity jurisdiction when it was filed. But the issue now is a very different one because the initial diversity-jurisdiction underpinning has been removed. On that score, the three-decade-old teachings of the Supreme Court in *Gibbs* and *Kroger* remain the definitive directive to the lower federal courts.

Accordingly, the Court finds that Defendants' remaining, non-diverse claim must be dismissed. Clearly, Congress established the unwavering rule that diversity jurisdiction may exist under 28 U.S.C. § 1332 only when there is complete diversity of citizenship. And that policy of the statute "calls for its strict construction." *See Kroger* 437 U.S. at 377, 98 S.Ct. 2396 (*citing, Healy v. Ratta,* 292 U.S. 263, 270, 54 S.Ct. 700, 78 L.Ed. 1248). Therefore, as in *Kroger,* "[t]o allow the requirement of complete diversity to be circumvented as it was in this case would simply flout the congressional command." 437 U.S. at 377, 98 S.Ct. 2396.

**WHEREFORE,** pursuant to 28 U.S.C. § 1367(c)(3) and *Kroger,* this case is **DISMISSED WITHOUT PREJUDICE** for lack of diversity jurisdiction. Judgment shall be entered accordingly.

**IT IS SO ORDERED.**

### *JUDGMENT*

For the reasons fully explained in the Opinion and Order issued by the Court on this same date, which the Court hereby incorporates, this case is hereby **DISMISSED WITHOUT PREJUDICE.**

**IT IS SO ADJUDGED AND DECREED.**